Abraham C. Bates (12440)
Brandon S. Mecham (13298)
WASATCH ADVOCATES, LLC
4525 Wasatch Blvd, Suite 300
Salt Lake City, Utah 84124
Tel. (801) 662-0077
Fax (801) 662-0082
abe@slclawfirm.com
brandon@slclawfirm.com

FILED IN UNITED STATES DISTRICT
COURT, DISTRICT OF UTAH

AUG 1 2 2011

BY D. MARK JONES, CLERK

DEPUTY CLERK

*Attorneys for Plaintiff ALLEN R. HAKES*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ALLEN R. HAKES, a married man,<br><br>     Plaintiff,<br><br>vs.<br><br>DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE ON BEHALF OF BCAP LLC TRUST 2007-AA2, a national association; BAC HOME LOANS SERVICING, LP, a Texas limited domestic partnership; RECONTRUST COMPANY, NA, a national association; and DOES 1-10,<br><br>     Defendants. | **MEMORANDUM IN SUPPORT OF EX-PARTE MOTION FOR TEMPORARY RESTRAINING ORDER & PRELIMINARY INJUNCTION**<br><br><br>Case No. 2:11-cv-00663-DB<br><br><br>The Honorable Dee Benson |

COMES NOW Plaintiff, ALLEN R. HAKES ("Hakes" or "Plaintiff"), by and through his

counsel of record and pursuant to Rule 65A of the UTAH RULES OF CIVIL PROCEDURE, and

hereby submits the following Memorandum in Support of Plaintiff's Motion for a Temporary

Restraining Order ("TRO") and Preliminary Injunction ("P-INJ") seeking an Order preventing

Defendants from selling Plaintiff's home at a Trustee's Sale.

///

1

## INTRODUCTION

Plaintiff filed a Complaint (the "Complaint") in the Fourth Judicial District Court, Utah County, State of Utah on June 29, 2011 against named defendant's alleging causes of action for Promissory Estoppel, Breach of Contract, Breach of Oral Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, Negligence, Negligent Misrepresentation, Breach of Fiduciary Duty, Negligent Infliction of Emotional Distress, Declaratory Judgment, and Permanent Injunction. *See* Pl.'s Verified Compl. On July 18, 2011, Defendants removed the case to this Court. A Trustee's Sale is currently scheduled for the Property on August 18, 2011.

As will be demonstrated more fully below, this Court should GRANT Plaintiff's Motion for TRO and P-INJ because: (1) Plaintiff will suffer irreparable harm unless the TRO and P-INJ issue; (2) the loss of Plaintiff's home outweighs any injury granting a TRO and P-INJ would cause Defendants; (3) issuing a TRO and P-INJ is not adverse to the public interest, and; (4) there is a substantial likelihood that Plaintiff will prevail on the merits of the Complaint or the case presents serious issues on the merits which will be the subject of further litigation.

Plaintiff's counsel certifies that defendant's will be personally served with the instant motion as soon as is practicable after filing with this Court. Nevertheless, because the sale of Plaintiff's home is scheduled for August 18, 2011, this TRO should issue before defendant's attorneys can be heard in opposition. If the defendant's do respond, and this Court believes a hearing is appropriate, Plaintiff does not object to all parties in this matter being heard.

///

///

///

2

## FACTS

1. Plaintiff borrowed money by executing a mortgage promissory note and trust deed in order to refinance real property located at 1455 West Elkview Circle, Mapleton, Utah 84664 (the "Property"). Pl.'s Verified Compl. at ¶ 8.

2. The Property is legally described as:

   > Lot 32, Plat "A", PARK MEADOWS ESTATES SUBDIVISION, Mapleton, Utah, according to the official plat thereof on file in the office of the Recorder, Utah County, Utah.

   *Id.*

3. On or about July 2009, Plaintiff contacted Defendant BAC Home Loans Servicing, LP ("BAC"), the servicer of his loan, via telephone and inquired whether he could lower his monthly payment or have his interest rate reduced. *Id.* at ¶ 12.

4. Prior to this phone conversation, Plaintiff had not missed a single payment on his loan. *Id.* at ¶ 13.

5. A BAC representative told Plaintiff that he could get a loan modification, but told Plaintiff he must become delinquent on his loan first. *Id.* at ¶ 14.

6. Plaintiff wanted to reaffirm the statement and clarified whether he had to be delinquent to qualify for a lower montly payment, to which the BAC representative affirmed and encouraged Plaintiff to stop making his payments in order to qualify. *Id.* at ¶ 15.

7. Plaintiff relied on the representations made by BAC and he stopped making payment on his loan on or around August 2009 in order to qualify for a permanent loan modification. *Id.* at ¶ 16.

8. Had Plaintiff known that his attempts to get a permanent loan modification would be

unsuccessful, he would have taken measure to continue making his payments. *Id.* at ¶ 17.

9.  In October 2009 BAC sent Plaintiff a loan modification application packet. *Id.* at ¶ 18.

10. By November 2009, as instructed, Plaintiff sent to BAC a completed application for a loan modification. *Id.* at ¶ 19.

11. In November, 2009, Plaintiff received a letter from BAC stating that he had qualified for a Home Affordable Trial Period Plan (the "Trial Plan"). *Id.* at ¶ 20, Ex. 3

12. The Trial Plan required Plaintiff to make payments for three consecutive months on December 1, 2009, January 1, 2010, and February 1, 2010, in the amout of $2,108.00, in order to demonstrate that Plaintiff would be able to make payments at the trial modification rate. *Id.* at ¶ 21, Ex. 3.

13. The Trial Plan explained that upon the completion of the three month period, BAC would determine the amount to be paid under a permanent modification plan. *Id.* at ¶ 22.

14. The Trial Plan represented, under the heading: "How long will it take to process my modification request and determine if I qualify for the program?", that it "may take up to **45 days** for us to review your documents once they are received.  We will process your modification request as quickly as possible." *Id.* at ¶ 23, Ex. 3.

15. At the time Plaintiff began making payments under the Trial Plan he fully and reasonably expected that, at the conclusion of the three month Trial Plan, he would be made aware within approximately 45 days of submitting the required documents and information whether he was approved for a permanent modification. *Id.* at ¶ 24.

16. Plaintiff timely made the required payments under the three month Trial Plan. *Id.* at ¶ 25.

17. Beginning in December 2009, Plaintiff was in weekly contact with the loss mitigation

department of BAC. *Id.* at ¶ 26.

18. BAC represented to Plaintiff that his home would not be foreclosed on while his application for a loan modification was under review or while he was current on his trial plan. *Id.* at ¶ 27–28.

19. In multiple phone conversations, various representatives of BAC repeatedly stated that as long as Plaintiff made the payments under the Trial Plan he would receive a permanent loan modification. *Id.* at ¶ 28.

20. Prior to the end of the Trial Plan, Plaintiff submitted all requested information and documents to BAC. *Id.* at ¶ 29.

21. In February 2010, when the Trial Plan period ended, Plaintiff contacted BAC to check the status of his permanent loan modification. *Id.* at ¶ 30.

22. BAC represented that they still needed additional documents in order to process his application even though Plaintiff had already submitted to BAC all documents it had requested from him. *Id.* at ¶ 31.

23. In an effort to expedite the loan modification process, Plaintiff resubmitted the requested documents to BAC. *Id.* at ¶ 32.

24. As March 2010 approached, the first month after the expiration of the trial plan, Plaintiff contacted BAC to determine whether he should continue making payments at the trial modification rate. *Id.* at ¶ 33.

25. BAC represented that Plaintiff should make another payment at the trial modification rate of $2,108.00 on March 1, 2010. *Id.* at ¶ 34.

26. By March 1, 2010, Plaintiff made a timely payment to BAC in the amount of $2,108.00.

*Id.* at ¶ 35.

27. As directed by BAC, Plaintiff continued to make timely payments of $2,108.00 for an additional eight (8) months after the conclusion of the three month Trial Plan. *Id.* at ¶ 36.

28. BAC represented that it would take up to 45 days to process Plaintiff's permanent loan modification, however, over one year had elapsed before Plaintiff received notice that his modification application was being denied, which is nowhere near 45 days. *Id.* at ¶ 37.

29. From November 2009 through December 2010 Plaintiff was in contact with representatives from BAC approximately twice a week. During these repeated phone calls, BAC carelessly and or negligently misrepresented to Plaintiff several material facts:

    a. That Hakes would qualify for a loan modification pursuant to the Home Affordable Modification Program ("HAMP").

    b. That Hakes should not worry about being foreclosed upon because he would shortly receive his final loan modification.

    c. That Hakes' application was incomplete and that they needed him to resubmit financial documents that he had already provided with the original application.

    d. That while Hakes was making trial payments there would be no additional deficiency on his loan while in fact BAC was adding, on information and belief, a deficiency amount plus late charges to his principal during the period he made trial payments.

    e. BAC made contradictory representations to Hakes through different agents. One agent of the principal told Hakes not to make trial payments after the three month trial period was over while another representatives told him to continue making the trial payments until he got a permanent loan modification.

    f. In over approximately one hundred phone calls, BAC repeatedly reassured Hakes that he would qualify for a permanent loan modification.

    g. BAC repeatedly represented that because Hakes would qualify for a permanet loan modification under HAMP, his new monthly payment would be 31% of his gross monthly income, and this figure would be accomplished by reducing the interest rate, reducing the principal, or extending the term of the loan.

    h. BAC never informed Hakes that his deficiency was growing while he made the monthly trial payments while BAC delayed making a decision on a permanent loan modification. This delay led to a deficiency amount that Hakes could not afford to repay.

*Id.* at ¶ 38.

30. On June 7, 2010, BAC sent a letter stating that his loan modification application had been denied ("Denial Letter"). *Id.* at ¶ 39, Ex. 4.

31. BAC denied Plaintiff's application for a permanent loan modification on false grounds. *Id.* at ¶ 40.

32. The reason for denial, as stated in the Denial Letter, was that Plaintiff's current monthly housing expense was already less than or equal to 31% of his gross monthly income. *Id.* at ¶ 41.

33. Plaintiff's monthly housing expense was in fact greater than 31% of his gross monthly income, despite BAC's claims to the contrary. *Id.* at ¶ 42.

34. In addition, the delay caused by BAC in processing Plaintiff's loan modification request caused the principal balance on Plaintiff's loan to grow to a point where he no longer qualified for a HAMP loan modification. *Id.* at ¶ 43.

35. BAC repeatedly represented to Plaintiff that he would qualify for a HAMP loan modification and that, if needed, BAC would use the 31% of monthly income as required by HAMP to either reduce the interest rate or reduce the principal on his mortgage to a point where he would qualify. *Id.* at ¶ 44.

36. Prior to receiving the Denial Letter, Plaintiff provided to BAC every document it requested including documents he had previously provided. *Id.* at ¶ 45.

37. After receiving the Denial Letter, Plaintiff contacted BAC and was told that the reason for denial was because BAC had not received all the required documents, even though Plaintiff previously provided all required documents. *Id.* at ¶ 46. This was a different reason than previously provided by BAC.

7

38. Plaintiff complied with each of BAC's requests for documents and information. *Id.* at ¶ 47.

39. BAC then told Plaintiff that it would not seek foreclosure until Plaintiff had an opportunity to reapply for a new loan modification. *Id.* at ¶ 48.

40. The Denial Letter stated: "Once we have finished reviewing your information, we will contact you within 10 days to let you know what other options are available to you and the next steps you need to take." *Id.* at ¶ 49, Ex. 4.

41. BAC never contacted Plaintiff after sending the Denial Letter to let him know what other options were available. *Id.* at ¶ 50.

42. Despite these representations, Deutsche executed a Substitution of Trustee naming ReconTrust as the trustee on August 17, 2010, which was recorded on August 19, 2010. *Id.* at ¶ 51, Ex. 5.

43. On August 17, 2010, ReconTrust executed a Notice of Default and recorded it on the Property on August 19, 2010. *Id.* at ¶ 52, Ex. 6.

44. ReconTrust currently has the Property scheduled to be sold at a public auction on August 18, 2011. *See id.* at ¶ 53; ReconTrust Sale Date 08-18-2011, attached as Exhibit 1.

45. Plaintiff was current on his mortgage payments and was only seeking to reduce his monthly payment when he first contacted BAC in July 2009 but now he faces the foreclosure of his family home as a direct result of the behavior of BAC. *Id.* at ¶ 55.

46. Plaintiff has suffered severe emotional distress from being strung along for nearly two (2) years in the modification process while he faces the loss of his primary residence. *Id.* at ¶ 56.

## ANALYSIS

A preliminary injunction and temporary restraining order are cognizable anticipatory remedies that are "proposed to prevent the perpetration of a threatened wrong or to compel the cessation of a continuing one."[1]  Additionally, both remedies further serve to "preserve the status quo pending the outcome of the case."[2]  Rule 65A of the Utah Rules of Civil Procedure sets forth the grounds for the issuance of a TRO or P-INJ as follows:

> (e) **Grounds**. A restraining order or preliminary injunction may issue only upon a showing by the applicant that:
> (e)(1) The applicant will suffer irreparable harm unless the order or injunction issues;
> (e)(2) The threatened injury to the applicant outweighs whatever damage the proposed order or injunction may cause the party restrained or enjoined;
> (e)(3) The order or injunction, if issued, would not be adverse to the public interest; and
> (e)(4) There is a substantial likelihood that the applicant will prevail on the merits of the underlying claim, or the case presents serious issues on the merits which should be the subject of further litigation.

Plaintiff now addresses each of the prongs listed, as grounds for issuance of a TRO and P-INJ, in Rule 65A of the Utah Rules of Civil Procedure, in turn.

## I.   THE LOSS OF HAKES' HOME WOULD IRREPARABLY HARM HIM.

Irreparable harm is by and large considered the most important factor in a court's determination of when to grant injunctive relief.[3]  "Irreparable harm", a term that is synonymous

---

[1] *System Concepts, Inc. v. Dixon*, 669 P.2d 421, 428 (Utah 1983).

[2] *Hunsaker v. Kersh*, 991 P.2d 67, 69 (quoting *Tri-State Generation & Transmission Ass'n v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir. 1986)).

[3] *System Concepts, Inc.*, 669 P.2d at 427 (citing 1 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2948 (1973)).

with "irreparable injury", is defined as "harm that a court would be unable to remedy even if the movant would prevail in the final adjudication."[4]   A party proves irreparable injury by establishing that "he or she is unlikely to be made whole by an award of monetary damages or some other legal, as opposed to equitable, remedy.[5]   Nevertheless, in some cases the court need not make an explicit finding of irreparable harm.[6]

Plaintiff will lose his home if this Court does not issue a TRO and stop the defendants from selling Plaintiff's home pursuant to foreclosure.  Indeed, Plaintiff cannot be made whole by an award of monetary damages or some other legal, as opposed to equitable remedy, and he will lose his home.  The wrongful eviction from one's home is a serious and irreparable injury.[7]  One can imagine few things more devastating and harmful than losing one's home, especially as a result of the wrongful actions of an entity that owes a duty, both statutory and fiduciary, to the wrongfully evicted.  Real property is unique and not fungible.  Plaintiff's home has even more intangible value than unimproved real property.  Plaintiff lives there with his wife and children, and possession of his home provides him with an unquantifiable value, specifically, adequate housing for himself and his family.  Plaintiff would suffer irreparable injury by not being able to provide himself and his family a safe and healthy sustaining place to live.  Plaintiff could not be made whole if this Court allows the wrongful taking of his home, a non-fungible asset, because a

---

[4] *Johnson v. Hermes Associates, Ltd.*, 128 P.3d 1151, 1157 (Utah, 2005) (citing 13 MOORE'S FEDERAL PRACTICE § 65.06[2] (3d ed. 2005)).

[5] *Id.* (citing AM.JUR.2d *Injunctions* § 33 (2004)).

[6] *See Culbertson v. Board of County Commissioners*, 44 P.3d 642, 649 (Utah 2001); *Utah County v. Baxter*, 635 P.2d 61, 64–65 (Utah 1981).

[7] *See* Order Granting Mot. for TRO & Inj. at n.1, *Wright v. Wells Fargo Bank*, No. 2:11-cv-402 (May 6, 2011), attached as Exhibit 2.

home is unique and its taking cannot be remedied by money damages.  Because Plaintiff cannot be made whole by an award of monetary damages, or some other legal remedy if his home is sold, this Court should find that the loss of Plaintiff's home would irreparably injure him.

## II.   THE RELATIVE HARM TO DEFENDANTS FROM GRANTING A TRO & P-INJ IS OUTWEIGHED BY THE SERIOUS INJURY HAKES WOULD SUFFER IN BEING FORCED FROM HIS HOME.

In determining whether to issue the requested TRO and P-INJ, this Court should take into account all facts and circumstances of this case.[8]  If this Court allows the scheduled sale on August 18, 2011 to go forward, Plaintiff will lose his home based on the wrongdoing of those seeking to foreclose.  Plaintiff was current on his mortgage payments until a BAC representative told him it was necessary to be delinquent in order to qualify for a home loan modification.  Furthermore, Plaintiff relied on Defendants' representations and did everything requested in order to obtain a modification.

The defendants, as sophisticated parties with access to large quantities of funding, have sufficient funds without the sale of Plaintiff's home to effectively continue to do business.  Moreover, the current situation was caused as a direct result of Defendants' bad acts.  The burden of requiring Defendant's to wait to foreclose until the allocation of liability is established is different in degree and kind to the injury that would be suffered by Plaintiff.  Because the future harm inflicted on Defendants by granting this TRO & P-INJ would be *de minimis* compared to the harm that Plaintiff would suffer by losing his home, this Court should find that the threatened injury to Plaintiff outweighs any harm issuance of the proposed order would cause Defendants.

---

[8] *System Concepts, Inc.*, 669 P.2d at 425.

11

III.   **THIS COURT'S ISSUANCE OF A TRO & P-INJ AGAINST DEFENDANTS IS NOT ADVERSE TO THE PUBLIC INTEREST.**

Issuance of a TRO and P-INJ is appropriate only if the movant shows that the injunction would not be adverse to the public interest. Lawful compliance by lenders and servicers with Utah's foreclosure statutes is a matter of public concern. The public, especially given the current state of the economy, have an interest in being able to trust that the representations made by servicers and lenders, at all times, including when they apply for home loan modification, are truthful and accurate. Because Plaintiff's goal, in seeking a TRO and P-INJ, seeks to aid the public's interest in lawful compliance with Utah foreclosure statutes this Court should find that issuance of the TRO & P-INJ is not adverse to the public interest. Furthermore, staying foreclosure would not be adverse to the public interest because this case concerns private, not public, property.

IV.   **THERE IS A SUBSTANTIAL LIKELIHOOD THAT HAKES WILL PREVAIL ON THE MERITS OF THIS CASE AND THAT THIS CASE PRESENTS SERIOUS ISSUES ON THE MERITS WHICH SHOULD BE THE SUBJECT OF FURTHER LITIGATION.**

Plaintiff filed the Complaint alleging causes of action for Promissory Estoppel, Breach of Contract, Breach of Oral Contract, Breach of Implied Covenant of Good Faith and Fair Dealing, Negligence, Negligent Misrepresentation, Breach of Fiduciary Duty, Negligent Infliction of Emotional Distress, Declaratory Judgment, and Permanent Injunction. Below, Plaintiff demonstrates why there is a substantial likelihood Plaintiff will prevail on the merits of these claims. Even in the event Plaintiff may not prevail on the merits, his claims raise serious issues that merit further litigation, such as, among other things, the issues of a loan servicer's fiduciary

duty and duty of good faith and fair dealing owed toward a borrower seeking a loan modification.

### 1. Plaintiff Pled a Prima Facie Cause of Action for Promissory Estoppel.

To properly plead a cause of action for promissory estoppel the Plaintiff must show that:

> (1)[t]he plaintiff acted with prudence and in reasonable reliance on a promise made by the defendant; (2) the defendant knew that the plaintiff had relied on the promise which the defendant should reasonably expect to induce action or forbearance on the part of the plaintiff or a third person; (3) the defendant was aware of all material facts; and (4) the plaintiff relied on the promise and the reliance resulted in a loss to the plaintiff.[9]

Plaintiff had no reason not to believe BAC's promises that: (1) it would fairly review Hakes for a permanent loan modification, (2) it would only take 45 days to review his documentation provided for a permanent loan modification, (3) it would process his modification request as quickly as possible, (4) it would give him a permanent loan modification as long as he continued to pay the Trial Plan, (5) it would use 31% of Hakes' monthly income, if needed, to either reduce the interest rate or principal on his mortgage to a degree where he would qualify under HAMP even in the event that his delinquency caused the principal balance to exceed the amount allowed under HAMP, and (6) it would not foreclose on Hakes' home as long as Hakes was attempting to receive a permanent loan modification. Pl.'s Verified Compl. at ¶¶ 104, 106.

---

[9] *Youngblood v. Auto-Ins. Co.*, 158 P.3d 1088, 1092 (Utah 2007) (quoting *Nunley v. Westates Casing Servs., Inc.*, 1999 UT 100, ¶ 25, 989 P.2d 1077)).

Plaintiff contacted BAC constantly seeking instruction and information regarding his pending loan modification application. *Id.* at ¶ 24, 28, 31, 36. BAC knew that the Plaintiff had relied on its instructions to become delinquent in order to qualify for a loan modification. BAC knew that Plaintiff continued to pay his payments at the Trial Plan rate in order to get his permanent modification. *Id.* at ¶ 32-34. BAC had at all times the relevant information regarding the Plaintiff's situation and knew the qualification necessary for him to qualify for a permanent modification *Id.* at ¶ 104. Plaintiff reasonably relied on the assurances and promises of BAC to his detriment and suffered damages. *Id.* at ¶ 106. Therefore, this Court should find that Plaintiff has pled sufficient facts to find a cause of action for promissory estoppel that is likely to succeed on the merits.

### 2. **Plaintiff Pled a Prima Facie Cause of Action for Breach of Contract and Breach of Oral Contract.**

"The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages."[10]

BAC had an oral contract with Plaintiff that it would not foreclose on Plaintiff as long as he attempted to receive a permanent loan modification and that it would negotiate in good faith. *Id.* at ¶¶ 86, 87. Utah courts have recognized that when "a party has changed his position by performing an oral modification so that it would be inequitable to permit the other party to found a claim upon the original agreement, the modified agreement should be held valid." *Fisher v. Fisher*, 907 P.2d 1172, 1176–77 (Utah Ct. App. 1995) ("Thus, where there is evidence of part performance under the modified agreement, and where it would be inequitable to permit a party

---

[10] *Campbell, Maack & Sessions v. Debry*, 38 P.3d 984, 991 (Utah Ct. App. 2001).

14

to repudiate the oral modification and seek enforcement of the written contract, the oral agreement may be removed from the statute of frauds and enforced.").

Plaintiff has pled facts demonstrating his reliance on BAC's representations, *id.* at ¶ 113, and continued performance under the contract by timely providing all necessary paperwork for permanent modification, resubmitting requested paperwork after BAC failed to maintain the submitted documents, and making timely payments under the Trial Plan, *id.* at ¶ 23, 30, 88. Plaintiff has pled facts in his Complaint demonstrating that BAC breached its obligation under the contract when it: (1) failed to maintain the documents and information submitted by Plaintiff, (2) failed to timely process Plaintiff application for permanent modification pursuant to its representation, (3) encouraged Plaintiff to make additional payments without applying those payments to his delinquency, and (4) denied Plaintiff application for permanent modification on the false premise that his monthly housing expense did not exceed 31% of his gross monthly income. *Id.* at ¶ 90. Plaintiff was damaged as a result of BAC's breach in an amount to be determined at trial. *Id.* at ¶ 91.      Furthermore, the Trial Plan included a written contract that BAC would provide Plaintiff with a HAMP permanent modification agreement to amend and supplement the original note so long as Plaintiff met his obligations. Pl.'s Verified Compl. at ¶ 79. Plaintiff indeed met all his obligations. The contract also required BAC, if it denied Plaintiff's application, to contact Plaintiff within 10 days of reviewing his information to make him aware of other options to avoid foreclosure. *Id.* at ¶ 80. Plaintiff performed his part of the bargain by making his payments under the Trial Plan and by providing all of the necessary documents and information to BAC in order to obtain the permanent modification. *Id.* at ¶¶ 23, 27, 81. BAC breached its obligation under the contract by failing to grant Plaintiff a permanent

modification and by failing to contact Plaintiff within 10 days of finishing its review of the information. *Id.* at ¶ 82. Plaintiff has suffered damages as a result of BAC's breach in an amount to be determined at trial. *Id.* at ¶ 84.

As a result of these allegations, this Court should find that Plaintiff has pled prima facie causes of action for breach of contract and breach of oral contract upon which he is likely to succeed.

### 3. Plaintiff Pled a Prima Facie Cause of Action for Breach of Implied Covenant of Good Faith and Fair Dealing.

The implied covenant of good faith and fair dealing (the "Covenant") inheres in every contract.[11] As distinguished from a contract's express terms, the Covenant "is based on judicially recognized duties not found within the four corners of the contract."[12] Under the covenant, "both parties to a contract impliedly promise not to intentionally do anything to injure the other party's right to receive the benefits of the contract."[13] Furthermore, the "[C]ovenant . . . should prevent either party from impeding the other's performance of his obligations [under the contract]; and . . . one party may not render it difficult or impossible for the other to continue performance and then take advantage of the non-performance he has caused."[14] Generally,

---

[11] *See Eggett v. Wasatch Energy Corp.,* 94 P.3d 193, 198 (citing, as examples, *CIG Exploration, Inc. v. State,* 24 P.3d 966 (Utah 1993); *Malibu Inv. Co. v. Sparks,* 996 P.2d 1043 (Utah 1997)).

[12] *Christiansen v. Farmers Ins. Exch.,* 116 P.3d 259, 265 (Utah 2001) (citing *Beck v. Farmers Ins. Exch.,* 701 P.2d 795, 798 (Utah 1985)).

[13] *Eggett,* 94 P.3d at 195.

[14] *Zion's Props., Inc. v. Holt,* 538 P.2d 1319, 1321 (Utah 1975) (footnote omitted).

whether a party to a contract has acted reasonably "is an objective question to be determined without considering the [party's] subjective state of mind."[15]

Plaintiff has alleged facts in his Complaint demonstrating that BAC and Plaintiff had an oral contract that BAC would not foreclose as long as Plaintiff attempted to get a permanent loan modification and that BAC would negotiate an alternative to foreclosure in good faith. Pl.'s Verified Compl. at ¶ 94, 95. Furthermore, the Complaint alleges that Defendants are estopped from denying that an oral modification of the original contract was agreed upon. *Id.* at ¶¶ 109–14. Then, in bad faith, BAC injured Plaintiff's right to receive the benefits of the contract by, among other things, failing to maintain the documents he submitted, failing to timely process his application, encouraging him to make eight (8) additional payments, denying his application on a false premise, and foreclosing on him while he was attempting to get a permanent modification. *Id.* at ¶ 97. Moreover, Plaintiff has sufficiently shown that BAC encouraged him to become delinquent on his mortgage, in order to qualify for modification, and then afterwards foreclosed on him based on the very delinquency it encouraged. *Id.* at ¶¶ 11–14, 41. As a result, BAC breached the Covenant by making it impossible for Plaintiff to stay current on his loan in hopes of getting a permanent loan modification then, taking advantage of the delinquency it encouraged, foreclosed on Plaintiff. *Id.* For these reasons, this Court should find that Plaintiff has pled a prima facie cause of action for breach of the Covenant that is likely to succeed on the merits.

///

///

---

[15] *Billings v. Union Bankers Ins. Co.*, 918 P.2d 461, 465 n.2 (Utah 1996) (considering whether insurer acted in bad faith).

### 4. Plaintiff Pled a Prima Facie Cause of Action for Negligence.

The tort of negligence allows a plaintiff to recover damages when he can prove "(1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, (3) that the breach of duty was the proximate cause of plaintiff's injury, and (4) that the plaintiff in fact suffered injuries or damages." *Hunsaker v. State*, 870 P.2d 893, 897 (Utah 1993). BAC and Deutsche owed Plaintiff a duty to exercise ordinary care and good faith. Pl.'s Verified Compl. at ¶ 59; *see also Arrow Indus., Inc. v. Zions First Nat'l Bank*, 767 P.2d 935, (Utah 1988) ("[W]e again reiterate that the UCC recognizes a bank's duty to act in good faith and exercise ordinary care in *all* of its dealings."). In addition, BAC and Deutsche owed Plaintiff a duty to refrain from "engag[ing] in an act or omission in transacting the business of a loan originator that constitutes dishonesty, fraud, or misrepresentation." U.C.A. § 70D-3-402(1)(g) (2010).

Plaintiff alleges in the Complaint that BAC, as an agent for Deutsche, breached its duty by encouraging Plaintiff to breach the terms of his Note and Trust Deed by becoming delinquent when it was foreseeable that Plaintiff may not qualify for a permanent loan modification. Pl.'s Verified Compl. at ¶ 60. Plaintiff also alleges that BAC and Deutsche's breach is the direct and proximate cause of the harm suffered by Plaintiff and that Plaintiff suffered damages resulting therefrom. *Id.* at ¶¶ 61–62. As a result of these allegations, this Court should find that Plaintiff has stated a prima facie cause of action for negligence.

### 5. Plaintiff Pled a Prima Facie Cause of Action for Negligent Misrepresentation.

The tort of negligent misrepresentation provides that a party injured through reasonable reliance upon a second party's careless or negligent misrepresentation of a material fact may recover damages resulting from that injury when the second party had a pecuniary interest in the

transaction, was in a superior position to know the material facts, and should have reasonably foreseen that the injured party was likely to rely upon the fact.[16]   If BAC offered Plaintiff a chance for a loan modification but required delinquency, it had a duty to tell Plaintiff the whole truth about the matter and make a fair disclosure in order to prevent a partial statement from being misleading or giving a false impression[17].

Plaintiff alleged in the Complaint that BAC, as agent for Deutsche, misrepresented to Plaintiff several material facts including, but not limited to: (1) that the only way he could qualify for home loan modification was to become delinquent on his loan, *see* Pl.'s Verified Compl. at ¶¶ 13, 14; (2) that BAC would take up to 45 days to review the documents submitted for permanent loan modification, *id.* at ¶ 21; (3) that BAC would process Hakes modification request as quickly as possible, *id.*; (4) that as long as Hakes made payments under the trial modification plan he would receive a permanent loan modification, *id.* at ¶ 26; (5) that if the amount of Hakes delinquency caused the principal balance to exceed the amount allowed under HAMP, BAC would use 31% of Hakes monthly income to either reduce the interest rate or reduce the principal on his mortgage to a point he would qualify for permanent home loan modification, *id.* at ¶¶ 42, 61.  BAC should have foreseen that the statements it was making were important and substantial and would result in Plaintiff's reliance.  *Id.* at ¶¶ 61, 67.  BAC, a sophisticated party, failed to use reasonable care to determine whether the statements were true, whether they were a fair disclosure, whether they constituted the whole truth, and whether they prevented partial statements from being misleading.  *Id.* at ¶¶ 61–64.  In addition, Plaintiff

---

[16] *See, e.g., Price-Orem Inv. Co. v. Rollins, Brown & Gunnell*, 713 P.2d 55, 59 (Utah 1986).

[17] AM.JUR.2d, § 209.

reasonably relied on the representations to his detriment. *Id.* at ¶ 67. As a result of these allegations this Court should find that Plaintiff has stated a prima facie cause of action for negligent misrepresentation.

### 6. Plaintiff Pled a Prima Facie Cause of Action for Breach of Fiduciary Duty.

In Utah, a fiduciary duty arises "when one party, having gained the trust and confidence of another exercise extraordinary influence over the other party."[18] A fiduciary relationship arose between BAC, Deutsche and Plaintiff during the modification process. Pl.'s Verified Compl. at ¶ 70. BAC, on behalf of Deutsche, gained Plaintiff's trust and confidence and then exercised extraordinary influence over him as his only means of obtaining a permanent loan modification and avoiding foreclosure. *Id.* BAC took improper advantage of Plaintiff's trust and confidence through its own superior knowledge of loan modifications by concealing important facts, risks, and consequences from Plaintiff and by failing to process his loan modification application in a timely manner. *Id.* at ¶ 72. Plaintiff has also adequately shown that BAC breached its fiduciary duty by deceiving Plaintiff by assuring him he would be approved for a permanent modification, leading him to believe the review process would only take 45 days, and then denying him on a false basis. *Id.* at ¶¶ 74-76. Plaintiff also adequately pled facts to show the harm he suffered as a result of the breach. *See id.* at ¶ 77. As a result of these allegations, this Court should find that Plaintiff has pled a claim for breach of fiduciary duty which he is likely to prevail on because BAC failed to act consistently with saving the loan as agreed upon by the parties, putting its own interests ahead of his.

///

---

[18] *See, e.g., State Bank of Southern Utah v. Troy Hygro Sys., Inc.,* 894 P.2d 1270, 1275 (Utah Ct. App. 1995).

**7. Plaintiff Pled a Prima Facie Cause of Action for Negligent Infliction of Emotional Distress.**

To properly plead a cause of action for negligent infliction of emotional distress, the Plaintiff must show that he or she suffered illness or bodily harm where the defendant (1) should have realized that such conduct involved an unreasonable risk of causing the emotional distress; or (2) from the facts know to the defendant, the defendant should have realized that the emotional distress, if it were caused, might result in illness or bodily injury.[19]

The loss one's home is a traumatic and frightening proposition, and Plaintiff was strung along for nearly two (2) years in the loan modification process fearing the loss of his home. Pl.'s Verified Compl. at ¶¶ 54, 68. BAC should have realized that its conduct in failing to process Plaintiff's application for a loan modification in a timely manner involved an unreasonable risk of causing emotional distress to Plaintiff. *Id.* at ¶ 110. In addition, Plaintiff has suffered illness or bodily harm from the result of the defendants' actions. *Id.* at ¶ 54, 109. In light of these facts, Plaintiff has pled sufficient facts to show a likelihood of success on the merits.

**8. Plaintiff Pled a Prima Facie Cause of Action for Declaratory Judgment.**

The Declaratory Judgments Act grants a district court jurisdiction to determine any question of construction or validity of a statute that affects the rights, status, or other legal relations of any person and to declare that person's rights, status, or legal relations under the statute.[20] Stated another way, "[a] justiciable controversy authorizing entry of a declaratory judgment is one wherein the plaintiff is possessed of a protectable interest at law or in equity and

---

[19] *White v. Blackburn*, 787 P.2d 1315, 1318 (Utah Ct. App. 1990); RESTATEMENT (SECOND) OF TORTS § 313 (1964).

[20] U.C.A. §78B-6-401.

the right to a judgment, and the judgment, when pronounced, must be such as would give specific relief."[21]

There is an actual controversy between the parties because Plaintiff challenges the legality of ReconTrust's ability to declare default and conduct a trustee's sale in Utah.  Pl.'s Verified Compl. at ¶ 115; *see also* U.C.A. § 57-1-23.5 (2011).   Because ReconTrust is not qualified to act as trustee of a trust deed in the state of Utah under U.C.A. § 57-1-21(1)(a)(i), (iv), 57-1-23.5, the Notice of Default should be declared void as a matter of law, thus invalidating the sale scheduled for August 18, 2011.  *Id.* at ¶ 117-120.  Plaintiff has a protectable property interest, namely, his ownership interest in his home.  *Id.* at ¶ 8, 9.  For these reasons, this Court should hold that Plaintiff has pled sufficient ground for a likelihood of success on his declaratory judgment claim.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court GRANT his Motion for Temporary Restraining Order and Preliminary Injunction.

DATED this 11th day of August, 2011.

By: _____

Brandon S. Mecham
*Attorney for Plaintiff ALLEN R. HAKES*

---

[21] *Baird v. State*, 574 P.2d 713, 716 (Utah 1978).

22

# EXHIBIT 1

# EXHIBIT 1

**ReconTrust**

| home | default services | financial assistance programs |

home > upcoming sales > search results

## Real Estate Foreclosures

### Search Results

We use our best efforts to include accurate and up to date information on this site. However, no warranties or guarantees are given regarding the completeness or accuracy of any information provided below, as this information is subject to change at anytime and is not always updated. The date, time and place of the sale as indicated below is subject to change without notice herein. Neither ReconTrust Company, its employees, its agents or any affiliates will be liable for any loss you or others sustain in relying upon this information.

Back to Previous Page

**Search Again**

From:
$ 0

To:
$ 10000000

Search

**Search Again by TS#**

TS#:
$

Search

| Property Address | Opening Bid Amount | Place of Sale | Date of Sale | Make checks payable to |
|---|---|---|---|---|
| 1120 EAST RUSSELL ROAD EAGLE MOUNTAIN , UT 84005 Utah County TS # : 2010-145011 | $192,000.00 | at the East Main Entrance, 4th Judicial District Courts Complex, 125 North 100 West, Provo, Utah | 8/16/2011 9:00:00 AM | RECONTRUST COMPANY |
| 1442 NORTH 2350 WEST LEHI , UT 840435536 Utah County TS # : 2009-153721 | $328,500.00 | at the East Main Entrance, 4th Judicial District Courts Complex, 125 North 100 West, Provo, Utah | 8/16/2011 9:00:00 AM | RECONTRUST COMPANY |
| 2378 NORTH NECTAR WAY SARATOGA SPRINGS , UT 84045 Utah County TS # : 2010-149748 | Bid Not Available | at the East Main Entrance, 4th Judicial District Courts Complex, 125 North 100 West, Provo, Utah | 8/16/2011 9:00:00 AM | RECONTRUST COMPANY |
| 276 SOUTH 600 EAST ALPINE , UT 84004 Utah County TS # : 2009-139953 | $310,500.00 | at the East Main Entrance, 4th Judicial District Courts Complex, 125 North 100 West, Provo, Utah | 8/16/2011 9:00:00 AM | RECONTRUST COMPANY |
| 2764 EAST RANCH RD EAGLE MOUNTAIN , UT 84043 Utah County TS # : 2008-99254 | $468,000.00 | at the East Main Entrance, 4th Judicial District Courts Complex, 125 North 100 West, Provo, Utah | 8/16/2011 9:00:00 AM | RECONTRUST COMPANY |
| 3362 SOUTH RED TAILED CRESCENT SARATOGA SPRINGS , UT 84045 Utah County TS # : 2010-14983 | Bid Not Available | at the East Main Entrance, 4th Judicial District Courts Complex, 125 North 100 West, Provo, Utah | 8/16/2011 9:00:00 AM | RECONTRUST COMPANY |
| 355 SOUTH 1410 EAST PROVO , UT 84606 Utah County TS # : 2010-161223 | Bid Not Available | at the East Main Entrance, 4th Judicial District Courts Complex, 125 North 100 West, Provo, Utah | 8/16/2011 9:00:00 AM | RECONTRUST COMPANY |
| 451 S 1430 W Lehi , UT 840433636 Utah County TS # : 2010-62396 | Bid Not Available | at the East Main Entrance, 4th Judicial District Courts Complex, 125 North 100 West, Provo, Utah | 8/16/2011 9:00:00 AM | RECONTRUST COMPANY |
| 4694 PHEASANT RIDGE TRAIL LEHI , UT 84043 Utah County TS # : 2011-18681 | $330,458.78 | at the East Main Entrance, 4th Judicial District Courts Complex, 125 North 100 West, Provo, Utah | 8/16/2011 9:00:00 AM | RECONTRUST COMPANY |
| 539 NORTH 800 EAST AMERICAN FORK , UT 84003 Utah County TS # : 2010-149063 | $183,470.49 | at the East Main Entrance, 4th Judicial District Courts Complex, 125 North 100 West, Provo, Utah | 8/16/2011 9:00:00 AM | RECONTRUST COMPANY |
| 543 NORTH MAIN OREM , UT 84057 Utah County TS # : 2008-101985 | $169,600.00 | at the East Main Entrance, 4th Judicial District Courts Complex, 125 North 100 West, Provo, Utah | 8/16/2011 9:00:00 AM | RECONTRUST COMPANY |
| 5529 WEST 10600 NORTH HIGHLAND , UT 84003 Utah County TS # : 2011-30341 | Bid Not Available | at the East Main Entrance, 4th Judicial District Courts Complex, 125 North 100 West, Provo, Utah | 8/16/2011 9:00:00 AM | RECONTRUST COMPANY |
| 65 EAST 350 SOUTH GOSHEN , UT 84633 Utah County TS # : 2009-187282 | $135,000.00 | at the East Main Entrance, 4th Judicial District Courts Complex, 125 North 100 West, Provo, Utah | 8/16/2011 9:00:00 AM | RECONTRUST COMPANY |
| 68 SOUTH DENALI CIRCLE LINDON , UT 84042 Utah County TS # : 2011-2998 | Bid Not Available | at the East Main Entrance, 4th Judicial District Courts Complex, 125 North 100 West, Provo, Utah | 8/16/2011 9:00:00 AM | RECONTRUST COMPANY |

| | | | | |
|---|---|---|---|---|
| 982 NORTH 1100 EAST PLEASANT GROVE , UT 84062 Utah County TS # : 2009-111366 | $346,500.00 | at the East Main Entrance, 4th Judicial District Courts Complex, 125 North 100 West, Provo, Utah | 8/16/2011 9:00:00 AM | RECONTRUST COMPANY |
| 985 EAST 1420 SOUTH SPANISH FORK , UT 846605910 Utah County TS # : 2010-50547 | $381,633.91 | at the East Main Entrance, 4th Judicial District Courts Complex, 125 North 100 West, Provo, Utah | 8/16/2011 9:00:00 AM | RECONTRUST COMPANY |
| 10612 NORTH CASTLE PINE WAY HIGHLAND , UT 84003 Utah County TS # : 2011-20822 | $330,000.00 | at the East Main Entrance, 4th Judicial District Courts Complex, 125 North 100 West, Provo, Utah | 8/18/2011 9:00:00 AM | RECONTRUST COMPANY |
| 1455 WEST ELKVIEW CIRCLE MAPLETON , UT 84664 Utah County TS # : 2010-100868 | Bid Not Available | at the East Main Entrance, 4th Judicial District Courts Complex, 125 North 100 West, Provo, Utah | 8/18/2011 9:00:00 AM | RECONTRUST COMPANY |
| 1997 WEST CRESCENT DRIVE MAPLETON , UT 84664 Utah County TS # : 2009-120291 | Bid Not Available | at the East Main Entrance, 4th Judicial District Courts Complex, 125 North 100 West, Provo, Utah | 8/18/2011 9:00:00 AM | RECONTRUST COMPANY |
| 260 BROOKSIDE DRIVE SPRINGVILLE , UT 84663 Utah County TS # : 2010-120091 | $108,000.00 | at the East Main Entrance, 4th Judicial District Courts Complex, 125 North 100 West, Provo, Utah | 8/18/2011 9:00:00 AM | RECONTRUST COMPANY |
| 290 NORTH PALISADES DRIVE OREM , UT 84097 Utah County TS # : 2009-42462 | $265,500.00 | at the East Main Entrance, 4th Judicial District Courts Complex, 125 North 100 West, Provo, Utah | 8/18/2011 9:00:00 AM | RECONTRUST COMPANY |
| 389 W 800 N LINDON , UT 84042 Utah County TS # : 2009-114302 | $180,000.00 | at the East Main Entrance, 4th Judicial District Courts Complex, 125 North 100 West, Provo, Utah | 8/18/2011 9:00:00 AM | RECONTRUST COMPANY |
| 5155 W. COUNTRY CLUB DRIVE HIGHLAND , UT 84003 Utah County TS # : 2010-68359 | $280,365.23 | at the East Main Entrance, 4th Judicial District Courts Complex, 125 North 100 West, Provo, Utah | 8/18/2011 9:00:00 AM | RECONTRUST COMPANY |
| 771 E 100 N PLEASANT GROVE , UT 840622503 Utah County TS # : 2011-17948 | Bid Not Available | at the East Main Entrance, 4th Judicial District Courts Complex, 125 North 100 West, Provo, Utah | 8/18/2011 9:00:00 AM | RECONTRUST COMPANY |
| 9896 N 5800 W HIGHLAND , UT 840039178 Utah County TS # : 2009-21738 | $378,000.00 | at the East Main Entrance, 4th Judicial District Courts Complex, 125 North 100 West, Provo, Utah | 8/18/2011 9:00:00 AM | RECONTRUST COMPANY |
| 1023 WEST 2550 NORTH LEHI , UT 84043 Utah County TS # : 2011-14813 | Bid Not Available | at the East Main Entrance, 4th Judicial District Courts Complex, 125 North 100 West, Provo, Utah | 8/23/2011 9:00:00 AM | RECONTRUST COMPANY |
| 1031 NORTH MAIN STREET MAPLETON , UT 84664 Utah County TS # : 2010-61141 | Bid Not Available | at the East Main Entrance, 4th Judicial District Courts Complex, 125 North 100 West, Provo, Utah | 8/23/2011 9:00:00 AM | RECONTRUST COMPANY |
| 1039 SOUTH 780 WEST PAYSON , UT 846513134 Utah County TS # : 2010-754 | Bid Not Available | at the East Main Entrance, 4th Judicial District Courts Complex, 125 North 100 West, Provo, Utah | 8/23/2011 9:00:00 AM | RECONTRUST COMPANY |
| 1356 FOOTHILL DR SANTAQUIN , UT 846555519 Utah County TS # : 2011-33393 | $253,817.15 | at the East Main Entrance, 4th Judicial District Courts Complex, 125 North 100 West, Provo, Utah | 8/23/2011 9:00:00 AM | RECONTRUST COMPANY |
| 1419 WEST 3175 NORTH LEHI , UT 84043 Utah County TS # : 2011-34091 | Bid Not Available | at the East Main Entrance, 4th Judicial District Courts Complex, 125 North 100 West, Provo, Utah | 8/23/2011 9:00:00 AM | RECONTRUST COMPANY |
| 2174 W WHISPER WOOD DR LEHI , UT 84043 Utah County TS # : 2011-34453 | $412,029.04 | at the East Main Entrance, 4th Judicial District Courts Complex, 125 North 100 West, Provo, Utah | 8/23/2011 9:00:00 AM | RECONTRUST COMPANY |
| 2983 RIDGETOP ROAD SUNDACE , UT 84604 Utah County TS # : 2010-24347 | Bid Not Available | at the East Main Entrance, 4th Judicial District Courts Complex, 125 North 100 West, Provo, Utah | 8/23/2011 9:00:00 AM | RECONTRUST COMPANY |
| 3824 WEST MORGAN BOULEVARD | $105,600.00 | at the East Main Entrance, 4th Judicial | 8/23/2011 | RECONTRUST COMPANY |

# EXHIBIT 2

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| DRUE WRIGHT, an individual,<br><br>    Plaintiff,<br><br>    vs.<br><br>RESIDENTIAL ACCEPTANCE NETWORK, INC., a Utah corporation; WELLS FARGO BANK, N.A., a national association; ETITLE INSURANCE AGENCY, LLC, a Utah limited liability company; and DOES 1-10,<br><br>    Defendants. | **ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER AND INUJUNCTIVE RELIEF**<br><br>Case No. 2:11-cv-00402-CW |

The Court, upon consideration of Plaintiff's motion, memorandum, and the oral arguments of counsel for Plaintiff and Defendant eTitle, finds that Plaintiff has met the requirements for issuing a Temporary Restraining Order by demonstrating that: (1) the case presents serious issues on the merits that will be the subject of further litigation; (2) Plaintiff will suffer irreparable harm if the injunction is denied and a Trustee's sale is conducted or a Trustee's Deed is recorded; (3) the threatened injury to Plaintiff significantly outweighs the harm that the temporary injunction may cause the Defendants; and (4) the injunction, if issued, will not adversely affect the public interest.

1

Plaintiff established that all named Defendants received notice of the hearing on Plaintiff's motion for a temporary restraining order, so this Order issues with notice to Defendants.[1]

**ORDER**

The Court HEREBY GRANTS a TEMPORARY RESTRAINING ORDER. Defendants Residential Acceptance Network, Inc., Wells Fargo Bank, N.A., and eTitle Insurance Agency, LLC are hereby enjoined from taking any action to foreclose on the property at issue in this litigation, including a foreclosure sale. The property at issue has an address of 978 East 11150 South, Sandy, Utah 84094, and a legal description of:

> Lot 25, EAGLEWOOD SUBDIVISION, according to the plat thereof as recorded in the office of the Salt Lake County Recorder.

This ORDER is effective immediately upon the conclusion of the hearing May 6, 2011 at 10:45 a.m. and expires at the conclusion of the evidentiary hearing set on this motion on May 11, 2011 at 9:00 a.m., unless extended for good cause showing or by stipulation from the Defendants.

Plaintiff is not required to post a bond at this time but may be so required at the hearing scheduled to take place on May 11, 2011.

_____

[1] To the extent that this Order could be construed as being without notice, the irreparable injury here is the sale of Plaintiff's primary residence, which has been found to be irreparable. The Plaintiff stated at the hearing that he faxed notice of the hearing to all Defendants.

An evidentiary hearing on the motion for preliminary injunction scheduled on May 11, 2011 at 9:00 a.m.  Plaintiff is ORDERED provide notice of this hearing to the named Defendants.

At the hearing, counsel are to address the legal issues including but not limited to, (1) whether the property subject to "Tender" in 15 U.S.C. § 1635(b) pertains to tender of the home which acts as security for the loan or to the principal of the loan, and (2) whether the loan agreement which is the subject of the above referenced action is exempt from TILA and therefore does not give rise to a right to rescind.

IT IS SO ORDERED.

DATED this 6th day of May, 2011.

BY THE COURT:

_Clark Waddoups_

Clark Waddoups
United States District Judge