Philip D. Dracht, #11561
FABIAN & CLENDENIN, P.C.
215 South State Street, Ste. 1200
Salt Lake City, UT 84111
Telephone:  (801) 596-2814
Facsimile:  (801) 596-2814
pdracht@fabianlaw.com

Attorneys for Deutsche Bank National Trust Company as Trustee for BCAP LLC Trust 2007-AA2; Recontrust Company, N.A., and BAC Home Loans Servicing, L.P.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ALLEN R. HAKES,<br><br>Plaintiff,<br><br>v.<br><br>DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee on behalf of BCAP LLC Trust 2007-AA2, a National Association; RECONTRUST COMPANY, N.A., a National Association; BAC HOME LOANS SERVICING, L.P., a Texas Limited Partnership; and DOEs 1-10,<br><br>Defendants | Case No. 2:11-cv-00663-DB<br><br><br>**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' VERFIEID COMPLAINT PURSUANT TO FED.R.CIV.P. 12(b)(6)** |

Deutsche Bank National Trust Company as Trustee for BCAP LLC Trust 2007 - AA2 ("Deutsche Bank"), ReconTrust Company, N.A. ("ReconTrust"), and BAC Home Loans Servicing, L.P., ("BAC") (collectively "Defendants") by and through their undersigned counsel, hereby submit their Memorandum in Support of Motion to Dismiss Plaintiff's Verified Complaint Pursuant to Fed.R.Civ.P. 12(b)(6), as follows:

### I.       INTRODUCTION

Every claim asserted by the Plaintiff in this action could have been brought in a previous action that was dismissed by this Court, with prejudice, pursuant to Fed.R.Civ.P. 12(b)(6). Specifically, on December 10, 2010, Plaintiff filed a Complaint in the Fourth Judicial District Court, located in Utah County, Utah (the "First Action") asserting claims for relief arising out of the same mortgage loan (the "Loan") that is the subject of this action.[1]   The First Action was removed to Federal District Court for the District of Utah, and assigned case number 11-cv-00001-TS.   More than 21 days after a Motion to Dismiss was filed under Fed.R.Civ.P. 12(b)(6) on behalf of, *inter alia*, ReconTrust and Deutsche Bank, Plaintiff filed, without leave or consent of any adverse party, an Amended Complaint.

This Amended Complaint included identical allegations to those in the Verified Amended Complaint (the "Verified Complaint") in this action—that BAC and Deutsche Bank failed to properly consider Plaintiff for a loan modification under the Home Affordable Modification Program ("HAMP").   ReconTrust and Deutsche Bank moved to strike the Amended Complaint in the First Action due to the fact that (1) Plaintiff knew all of the facts that were the subject of his amendment prior to filing the First Action, but failed to explain any reason why those facts were not alleged in his initial pleading, and (2) Plaintiff failed to file for leave of court or seek consent of any adverse party, as required by Fed.R.Civ.P. 15(a)(2).   This Court agreed, and denied Plaintiff's defective attempt to amend his initial Complaint in the First Action.   Further, the Court ultimately dismissed Plaintiff's initial Complaint, with prejudice, pursuant to Fed.R.Civ.P. 12(b)(6).

---

[1] The Defendants in the First Action included, as relevant here, Mortgage Electronic Registration Systems, Inc., ("MERS"), Deutsche Bank, and ReconTrust.

This entire action is therefore barred by the doctrine of claim preclusion.  Here, the Plaintiff has effectively re-filed a previous lawsuit that he lost, in an attempt to relitigate the same issues that were known, but not properly pled, in the First Action.  The principle of finality would be rendered meaningless if Plaintiff were permitted to avoid the consequences of this Court's dismissal of the First Action with prejudice through this tactic.  Accordingly, on this basis alone, dismissal with prejudice is appropriate.

Moreover, even if the Court were to put this crucial defect aside, Plaintiff's claims fail as a matter of law.  Each is premised upon a failure to provide Plaintiff his desired loan modification under HAMP, which, through artful pleading, he has attempted to disguise as if they were state-law claims.  However, the decisions on this point are unequivocal—a claim arising out of a HAMP modification is legally indistinguishable from an attempt to assert a private right of action under HAMP itself, and all such disguised claims are barred.  Finally, each claim fails to allege the legal and factual elements necessary to state a plausible claim, aside from the bar of claim preclusion and the absence of a private right of action under HAMP. Accordingly, the Verified Complaint should be dismissed, with prejudice.

## II.    LEGAL STANDARD

In assessing a motion to dismiss filed under Rule 12(b)(6) this Court's task is to determine whether the complaint has stated a claim for relief "that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Under this standard, a claim has factual plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009); *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th. Cir. 2008).

Two working principles govern the analysis of a motion to dismiss filed under Rule 12(b)(6). *See Iqbal,* 129 S. Ct. at 1949 (2009).

First, the precept that the Court must accept as true all of the factual allegations in a complaint is inapplicable to legal conclusions. *Id.* The requirement that a complaint provide a "short and plain statement . . . showing the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), requires more than "an unadorned the-defendant-unlawfully-harmed-me accusation," *Twombly,* 550 U.S. at 555 (2007); *see also, e.g., Robbins,* 519 F.3d at 1247 (10th Cir. 2008). Consequently, a complaint that offers "labels or conclusions" or a "formulaic recitation of the elements of a cause of action" is insufficient. *Iqbal,* 129 S. Ct. at 1949 (2009). Nor does a complaint suffice if it provides "naked assertions devoid of further factual enhancement." *Id.* at 1949.

Second, determining whether a complaint states a "plausible claim for relief" is a "context-specific task that requires the court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1949 (2009) (citing *Twombly*, 550 U.S. at 555 (2007)). In other words, "[t]he [well-pleaded factual] allegations in the complaint must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins,* 519 F.3d at 1247 (10th Cir. 2008) (quoting *Twombly,* 550 U.S. at 555 (2007)).

### III. LEGAL ARGUMENT

**A.**   <u>**Plaintiff's Claims Are Barred By The Doctrine Of Claim Preclusion**</u>.

Plaintiff's claims are barred by the doctrine of claim preclusion, because they could have been asserted in the First Action, which was dismissed with prejudice pursuant to Fed.R.Civ.P.

12(b)(6).   Indeed, the Verified Complaint is largely indistinguishable from the Amended Complaint that Plaintiff filed in the First Action, and each is premised upon the same alleged facts—the failure to obtain a desired loan modification under HAMP.  *Compare* Ver. Complaint (the operative complaint here) attached as Exhibit A, ¶¶ 12-56, *with* Am. Compl. filed in case no. 11-cv-00001-TS, attached as Exhibit B, ¶¶ 73-106.  Plaintiff's attempt to re-file his dismissed lawsuit in state court after receiving an unfavorable judgment on the merits in this Court is precisely the type of tactic that is barred under the doctrine of claim preclusion.

There are three elements that must be satisfied for a claim to be barred by the doctrine of claim preclusion: (1) a final judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits.  *See, e.g., Wilkes v. Wyoming Dept. of Employment Div. of Labor Standards,* 314 F.3d 501, 504 (10th Cir. 2002); *Yapp v. Excel Corp.*, 186 F.3d 1222, 1226 (10th Cir. 1999).  In successive diversity actions where the first action terminated in a dismissal with prejudice, the federal court must apply the federal common law of claim preclusion, even if the dismissal of the first action was based on state law.  *See, e.g., Dodge v. Cotter Corp.,* 203 F.3d 1190, 1197-1198 (10th Cir. 2000) ("although the issue precluded, negligence, is a matter of state law, the preclusive effect given in federal court to a prior federal judgment is subject to federal law") (citing *Murdock v. Ute Indian Tribe of Uintah & Ouray Reservation*, 975 F.2d 683, 687 (10th Cir. 1992)); *In re Corey*, 583

F.3d 1249, 1251 (10th Cir. 2009); *Rawe v. Liberty Mut. Fire Ins. Co*., 462 F.3d 521, 528 (6th Cir. 2006); *Hoult v. Hoult,* 157 F.3d 29, 31 (1st Cir. 1998).[2]

Where it applies, claim preclusion bars not only claims that were actually brought, but any claims that could have been brought in the initial proceeding.  *See, e.g., MACTEC, Inc. v. Gorelick,* 427 F.3d 821, 831 (10th Cir. 2005); *Satsky v. Paramount Communications, Inc.*, 7 F.3d 1464, 1467-68 (10th Cir. 1993).  Here, each of these elements is satisfied.  Initially, the First Action was dismissed, with prejudice, pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a plausible claim under Fed.R.Civ.P. 8(a)(2).  *See* Memo. Dec. and Order dated May 23, 2011, in case no. 11-cv-00001-TS, attached as <u>Exhibit C</u>; Judgment dated May 24, 2011, in case no. 11-cv-00001-TS, attached as <u>Exhibit D</u>.  Pursuant to Fed.R.Civ.P. 41(b), the dismissal, in conjunction with the judgment that specifically stated it was entered with prejudice, operated as a final adjudication on the merits.  *See, e.g., Paganis v. Blonstein,* 3 F.3d 1067, 1071 (7th Cir. 1993) ("Rule 41(b) states that unless the judgment provides otherwise, involuntary dismissal, including a dismissal for failure to state a claim under Rule 12(b)(6), is an adjudication on the merits-in other words, a dismissal with prejudice.")

Second, the Defendants in this action are the same parties or in privity with the Defendants in the First Action.  Both Deutsche Bank and ReconTrust were named parties in the First Action, due to their connection with the Loan.  *See generally*, <u>Ex. B</u>.  BAC is the only party in this action who was not named in the First Action, but it is in privity with Deutsche Bank and ReconTrust, because it is named as a Defendant here solely because of its alleged capacity as an

---

[2] It is notable, however, that the elements for claim preclusion appear to be identical under Utah state substantive law.  *See Macris & Assocs., Inc. v. Neways, Inc.,* 16 P.3d 1214, 1219 (Utah 2000).

agent of Deutsche Bank that administered Plaintiff's attempted modification under HAMP.  *See* Ex. A, ¶¶ 12-36, ¶¶ 58-59, ¶¶ 64-73, ¶ 77, ¶ 86 (alleging that BAC is liable due its actions as an alleged agent of Deutsche Bank); *see also* Ex. B, ¶¶ 73-106 (alleging that Bank of America, N.A., of whom BAC is a wholly-owned subsidiary, administered Plaintiff's attempted HAMP modification).

Under these circumstances, where BAC is allegedly an agent of Deutsche Bank, and is alleged to share the same liability regarding the failed loan modification while purportedly acting on Deutsche Bank's behalf, the requirement for privity is satisfied.  *See, e.g., St. Louis Baptist Temple, Inc. v. Federal Deposit Ins. Corp.*, 605 F.2d 1169, 1174 (10th Cir. 1979) ("Privity requires, at a minimum, a substantial identity between the issues in controversy and showing that the parties in the two actions are really and substantially in interest the same"); *Pacific Frontier v. Pleasant Grove City,* 414 F.3d 1221, 1230 (10th Cir. 2005) ("The legal definition of a person in privity with another, is a person so identified in interest with another that he represents the same legal right") (applying Utah state law).  Simply put, the liability alleged against BAC here is indistinguishable from the liability alleged against Deutsche Bank in both the Amended Complaint in the First Action and the Verified Complaint in this action.

Third and finally, the claims asserted in this action could have been brought in the First Action.  This is demonstrated by the Amended Complaint filed in the First Action, which contains allegations regarding Plaintiff's failed HAMP modification that are nearly identical those contained in the Verified Complaint filed in this action.  *Compare* Ex. A, ¶¶ 12-56, *with* Ex., ¶¶ 73-106.  Moreover, as a matter of timing, Plaintiff alleges that he was notified of the denial of his HAMP modification on June 7, 2010, and that a notice of default was recorded

against his property on August 17, 2010.  *See* <u>Ex. A</u>, ¶ 39, ¶ 52.  Thus, he was clearly aware of the facts supporting his claims in this action—the failed HAMP modification—several months before the First Action was commenced in state court on December 10, 2010.

Accordingly, the claims asserted in this action could have been brought in the First Action, and as a consequence, each of the elements for application of the doctrine of claim preclusion have been satisfied, as a matter of law.  Plaintiff's Verified Complaint should therefore be dismissed, with prejudice.

**B.**      **<u>Plaintiff's Claims Should Be Dismissed Because Each Claim Arises Under HAMP</u>**.

Plaintiff asserts seven claims for relief against the Defendants, for negligence, negligent misrepresentation, breach of fiduciary duty, breach of contract, breach of an oral contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, negligent infliction of emotional distress, and a request for a permanent injunction.  However, each of these claims is nothing more than an attempt to assert a private right of action under HAMP, which this Court has previously held not to be a cognizable claim.  Accordingly, each of Plaintiff's claims for relief fails as a matter of law and should be dismissed, with prejudice.

It is well-settled that there is no private right of action under HAMP.  HAMP is part of the Troubled Assets Relief Program ("TARP") which was enacted as a subchapter of the Emergency Economic Stabilization Act ("EESA"), 12 U.S.C. §§ 5201, *et seq. See, e.g., Manabat v. Sierra Pacific Mortg. Co., Inc.*, 2010 WL 2574161 at *11 (E.D. Cal. June 25, 2010).  TARP directs the Treasury Department and other federal agencies to modify loans which they own or control and expands the "HOPE for Homeowners" program by altering eligibility and increasing the ability of the Department of Housing and Urban Development to help families keep their

homes.  *See* 12 U.S.C. §§ 5211-5212, 5219-5220; *see also, e.g., Manabat,* 2010 WL 2574161 at *11 (E.D. Cal. June 25, 2010).

With TARP, Congress provided a private right of action for those directly harmed by the actions of the Secretary of the Treasury Department.  *See* 12 U.S.C. § 5229(a).  However, by limiting the private right of action in this fashion, by implication "12 U.S.C. § 5229(b)(1) shows Congress' intent to limit private action under TARP solely to actions against the Secretary." *Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1185 (N.D. Cal. 2009); *see also, e.g., Brown v. Bank of New York Mellon,* 2011 WL 206124 at * 2 (W.D. Mich. Jan. 21, 2011) ("All of the district courts that have considered the issue have held that homeowners do not have a private right of action under HAMP.") (Collecting authorities).

Since there is no private right of action under HAMP, Plaintiff's claims fail.  This holds true in spite of Plaintiff's attempt to plead his claims as arising under state law.  Each claim had its genesis in a failed HAMP modification, and the allegedly wrongful conduct alleged against the Defendants is rooted in a failure to provide the precise loan modification Plaintiff desired. This Court has previously rejected such attempts to circumvent the limitation on private causes of action under HAMP, *see Terry v. IndyMac Mortg. Servs.,* 2011 WL 2112033, at *1 (D. Utah May 26, 2011); *Andersen v. Homecomings Financial, LLC,* 2011 WL 2470509 at *8 (D. Utah June 20, 2011), in conformance with the majority of Courts to have considered the issue in other federal districts, *see, e.g., Vida v. OneWest Bank, F.S.B.*, 2010 WL 5148473 at *5 (D. Or. Dec. 13, 2010) ("The flaw in Vida's logic is that the alleged offer to modify came about and was made wholly under the rubric of HAMP, as were Vida's alleged actions in acceptance of the offer.")  Here, each of Plaintiff's purported state-law claims is indistinguishable from asserting a

cause of action under HAMP itself, and should therefore be dismissed, with prejudice.  *See Lund v. CitiMortage, Inc.,* 2011 WL 1873690 at *2 n. 12 (D. Utah May 17, 2011) ("Plaintiff's allegations regarding breach of contract are simply an attempt at enforcing a private right of action under HAMP.")

**C.**     **Plaintiff's Claims Otherwise Fail As A Matter Of Law And Should Be Dismissed.**

    **1.**     **Plaintiff's negligence claims are barred by the economic loss rule.**

Plaintiff's claims for negligence and negligence misrepresentation are attempts to recover in tort for the breach of an alleged contractual obligation to provide Plaintiff a HAMP modification, and are therefore barred by the economic loss rule.  The rule is a "judicially created doctrine that marks the fundamental boundary between contract law, which protects expectancy interests created through agreement between the parties, and tort law, which protects individuals and their property from physical harm by imposing a duty of reasonable care."  *SME Indus., Inc. v. Thompson, Ventulett, Stainback and Assocs., Inc.,* 28 P.3d 669, 679 (Utah 2001).  It serves two important purposes: first, it bars recovery of economic losses in negligence actions unless the plaintiff can show physical damage to other property or bodily injury; and, second, the economic loss rule prevents parties who have contracted with each other from recovering beyond the bargained-for risks.  *See, e.g., Sunridge Dev. Corp. v. RB & G Eng'g, Inc.,* 230 P.3d 1000, 1006 (Utah 2010).

Here, Plaintiff's negligence claims are barred by the economic loss rule.  He has not plausibly alleged any physical damage to his property or bodily injury as a consequence of failing to receive a loan modification under HAMP.  Moreover, the HAMP Trial Period Plan attached to his Verified Complaint as <u>Exhibit 3</u> embodies the complete understanding between

the Plaintiff and Defendants with respect to the administration of the modification process under HAMP.  *See generally, e.g.,* <u>Exhibit 3</u> to Ver. Compl.  Thus, to the extent Plaintiff can recover for wrongful conduct in the context of his attempted HAMP modification, he must aver a specific breach of a duty arising under the Trial Period Plan, if at all.

He has failed to meet this burden.  Instead, he alleges that Defendants were "negligent" but does not tie this claim to any specific duty appearing in the Trial Period Plan, or any other written agreement affecting his Loan.  Accordingly, these claims are barred by the economic loss rule, and should be dismissed, with prejudice.  *See Homecomings Financial, LLC,* 2011 WL 2470509 at *8 (D. Utah June 20, 2011) (dismissing negligent misrepresentation claim premised upon a failed HAMP modification due to the operation of the economic loss rule).

> **2.**     **<u>Plaintiff's breach of fiduciary duty claim fails as a matter of law</u>.**

Plaintiff's breach of fiduciary duty claim fails as a matter of law because none of the Defendants owed him a fiduciary duty, and even if one could be imposed under the circumstances presented here, the alleged breach of that duty is contrary to the express language of the Trial Period Plan.  Utah law does not generally recognize a fiduciary duty between a lender and a borrower.  *See State Bank of Southern Utah v. Troy Hygro Systems, Inc.,* 894 P.2d 1270, 1275 (Utah App. 1995).  Only in unusual circumstances, none of which are pled here, does such a duty exist, such as where "one party, having gained the trust and confidence of another exercises extraordinary influence over the other party."  *Von Hake v. Thomas*, 705 P.2d 766, 769 (Utah 1985).  In describing the circumstances under which a fiduciary relation may be held to exist, the Utah Supreme Court has stated as follows:

> A fiduciary relationship imparts a position of peculiar confidence placed by one individual in another. A fiduciary is a person with a duty to act primarily for the benefit of another. A fiduciary is in a position to have and exercise and does have and exercise influence over another. A fiduciary relationship implies a condition of superiority of one of the parties over the other. Generally, in a fiduciary relationship, the property, interest or authority of the other is placed in the charge of the fiduciary.

*First Sec. Bank of Utah N.A. v. Banberry Development Corp*., 786 P.2d 1326, 1333 (Utah 1990).

Here, there are no facts pled in the Verified Complaint that support the existence of a fiduciary duty, nor any facts plausibly indicating a breach of any such duty.  The Defendants, primarily BAC and Deutsche Bank, were involved in an arms-length transaction regarding his Loan, that was embodied in the Deed of Trust, and subsequently, the Trial Period Plan.  Plaintiff sought to modify his Loan, admittedly as a consequence of his default.  *See* Ex. A, ¶ 77.

It is implausible to suggest under these circumstances, in which the Plaintiff was involved in negotiations to provide him a modification to which he is not entitled, that Defendants exercised extraordinary control over his decisions, or that Defendants have the traditional characteristics that typify a fiduciary, such as acting primarily for the benefit of the Plaintiff. Moreover, the alleged breach of duty is based upon a representation—that if Plaintiff made his trial period payments he would automatically receive a modification—that is contrary to the Trial Period Plan itself, which states unequivocally that no modification will occur until the execution of a Modification Agreement.  *See* Ex. 3 to Ver. Compl., p. 1; *see also*, p. 4 at ¶ 3 (entitled "The Modification," stating that only upon execution of a Modification Agreement would there be any change in the Note or Deed of Trust), at ¶ 4. D. (entitled "Additional Agreements," stating that the Note and Deed of Trust remain in full force and effect until modified).

In sum, there are no facts alleged that would support the findings necessary to impose a fiduciary relationship upon the Defendants, and the conduct that allegedly constitutes a breach of any such duty is contrary to the express language of the Trial Period Plan.  Accordingly, this claim fails to show a plausible entitlement to relief as a matter of law.

      3.      **Plaintiff's breach of contract claim is contrary to the Trial Period Plan.**

Plaintiff's breach of contract claims fail as a matter of law because each is contrary to the express provisions of the Trial Period Plan.  Specifically, Plaintiff alleges a breach occurred because Defendants failed to provide him with a HAMP modification, or because they made oral representations that were contrary to the Trial Period Plan.  *See* Ex. A at ¶ 86.  However, the Trial Period Plan itself states in at least three different sections that no modification would be effective until a Modification Agreement was executed by the parties.  *See* Ex. 3 to Ver. Compl., p. 1; *see also*, p. 5 at ¶ 3 (entitled "The Modification," stating that only upon execution of a Modification Agreement would there be any change in the Note or Deed of Trust), at ¶ 4. D. (entitled "Additional Agreements," stating that the Note and Deed of Trust remain in full force and effect until modified).  Moreover, the Trial Period Plan in general makes clear that Plaintiff's right to a modification is subject to qualification and review, and thus no contract can be formed until a Modification Agreement is fully executed.

As previously recognized by this Court, a party cannot prevail on a breach of contract claim, as a matter of law, when the agreement that is purportedly breached is contrary to the terms of the document that defines the rights and duties of the parties thereto.  *Lund v. CitiMortage, Inc*., 2011 WL 1873690 at *2 (D. Utah May 17, 2011) ("The Court further finds that Plaintiffs' breach of contract claim fails on the merits because it contradicts the clear

13

language of the HAMP Loan Trial Agreement. That document makes clear that the modification is subject to qualification and that the modification would not be made permanent until, among other things, Plaintiffs received a fully executed copy of a modification agreement.")  Plaintiff's breach of contract claims seek to do just that, and therefore should be dismissed, with prejudice.

4.  **Plaintiff's breach of the covenant of good faith claim fails as a matter of law.**

Plaintiff's claim for breach of the covenant of good faith and fair dealing claim fails a matter of law because it seeks to impose new duties that are not found in any written agreement between the Plaintiff and any of the Defendants.  In his Verified Complaint, Plaintiff alleges a variety of actions that purportedly constitute a breach of the duty of good faith and fair dealing. *See* Ex. A at ¶ 104.  However, none of these actions are barred by the Trial Period Plan, or any other document related to the Loan, such as the Deed of Trust.

Under well-established Utah law, Plaintiff cannot circumvent the binding effect of a written contract by relying upon an amorphous breach of the covenant of good faith and fair dealing.  *See, e.g., Oakwood Village LLC v. Albertsons, Inc.*, 104 P.3d 1226, 1239-40 (Utah 2004).  For example, Plaintiff avers that Defendants are liable because they lost some of his paperwork submitted in connection with the HAMP modification process, and requested additional copies.  *See* Ex. A at ¶ 104 (c).  Yet, Plaintiff does not point to any provision of any document that deprives any Defendant of the right to request additional documentation in connection with his requested modification.  Accordingly, this claim fails as a matter of law and should be dismissed, with prejudice.

5.      __Plaintiff's claim for promissory estoppel fails as a matter of law__.

Plaintiff's promissory estoppel claim essentially restates his claims for breach of contract, and fails for the same reason—the allegations are contrary to the express language of the Trial Period Plan.  Promissory estoppel requires a showing of the following: (1) the plaintiff acted with prudence and in reasonable reliance on a promise made by the defendant; (2) the defendant knew that the plaintiff had relied on the promise which the defendant should reasonably expect to induce action or forbearance on the part of the plaintiff or a third person; (3) the defendant was aware of all material facts; and (4) the plaintiff relied on the promise and the reliance resulted in a loss to the plaintiff.  *See, e.g., Youngblood v. Auto–Owners Ins. Co.,* 158 P.3d 1088, 1092 (Utah 2007).

Here, Plaintiff cannot satisfy the reasonable reliance element necessary to survive dismissal of this claim.  As previously discussed, the Trial Period Plan makes clear that it is not a loan modification and that any modification would be contingent upon further approval.  It is well-settled that "a party cannot reasonably rely upon oral statements by the opposing party in light of contrary written information."  *Gold Standard, Inc. v. Getty Oil Co*., 915 P.2d 1060, 1068 (Utah 1996).  Accordingly, this claim fails as a matter of law and should be dismissed, with prejudice.  *Lund,* 2011 WL 1873690 at *2 (D. Utah May 17, 2011) (dismissing promissory estoppel claim that was premised on allegations contrary to the express language of a HAMP trial period agreement).

6.      __Plaintiff's claim for negligent infliction of emotional distress is without merit__.

Plaintiff's negligent infliction of emotional distress claim fails as a matter of law because there are no facts alleged that would plausibly indicate any Defendants' conduct was outrageous

or that any Defendant intended to cause the Plaintiff emotional distress.  In Utah, to establish a claim for intentional infliction of emotional distress, four elements must be shown: (1) the defendant's conduct was outrageous and intolerable in that it offended generally accepted standards of decency and morality; (2) the defendant intended to cause, or acted in reckless disregard of the likelihood of causing, emotional distress; (3) the plaintiff suffered severe emotional distress; and (4) the defendant's conduct proximately caused the emotional distress. *See Prince v. Bear River Mut. Ins. Co*., 56 P.3d 524, 535 (Utah 2002).  Here, Plaintiff has not alleged any facts that would show any of the Defendants acted outrageously, or that they intended to cause him to suffer severe emotional distress, merely by virtue of denying him a loan modification to which he was not entitled in the first instance as a defaulting borrower. Accordingly, this claim fails as a matter of law and should be dismissed, with prejudice.[3]

### 7.    Plaintiff's declaratory judgment claim is preempted by federal law.

Plaintiff's claim for declaratory judgment seeks a declaration that ReconTrust is barred from participating in the foreclosure of Plaintiff's property by Utah statutes governing the registration of private trustees, namely Utah Code Ann. § 57-1-21.  However, as this Court has previously held, ReconTrust's authority to foreclose is governed by the National Bank Act ("NBA").  Under the NBA, the laws of Texas rather than Utah govern ReconTrust's activities, and under Texas law, it has the authority to act in a trustee capacity.  Furthermore, the NBA preempts entirely the Utah statutes relied upon by the Plaintiff.

---

[3] Plaintiff's request for an injunction fails because he has failed to show an entitlement to relief on any claim that might justify this remedy.

As a threshold matter, it is undisputed that ReconTrust is a federally chartered national bank association governed by the NBA and regulated by the OCC.  *See also Cox v. ReconTrust Co., N.A.*, 2010 2010 WL 2519716 at *5 (D. Utah June 18, 2010) ("there is no dispute that ReconTrust is a national bank governed by the National Banking Act").  It is likewise undisputed that this Court has previously held that the NBA preempts Utah Code Ann. § 57-1-21.  *See id.* at * 8-9.  As such, ReconTrust's fiduciary activities as trustee are governed by the framework set forth in 12 U.S.C. § 92a and Part 9 of the OCC's implementing regulations, which are part of the NBA.  *See* 12 U.S.C. § 92a (2010); 12 C.F.R. § 9.7 (2010).

Section 92a(a) specifically provides:

> The Comptroller of the Currency shall be authorized and empowered to grant by special permit to national banks applying therefore, when not in contravention of State or local law, the right to act as trustee . . . or in any other fiduciary capacity in which State banks, trust companies, or other corporations which come into competition with national banks are permitted to act under the laws of the State in which the national bank is located.

12 U.S.C. § 92a(a).  Thus, § 92a permits national banks to exercise fiduciary powers, and provides that the specific types of fiduciary powers available to a national bank are determined by the "laws of the State in which the national bank is located."  12 U.S.C. § 92a; *see also* OCC Interpretive Letter 1103 at 3.  Further, the grant of statutory authority in Section 92a imposes no limitations on where a national bank may exercise its fiduciary duties.  *See id.*

Next, Part 9 of the OCC implementing regulations provides where a national bank is "located" under § 92a:

> State laws used in section 92a.  The state laws that apply to a national bank's fiduciary activities by virtue of 12 U.S.C. § 92a are the laws of the state in which the bank acts in a fiduciary capacity.

12 C.F.R. § 9.7(e).  Accordingly, where a national bank is "located" under § 92a depends on where the national bank "acts in a fiduciary capacity."  *Id.*  Again, Part 9 of the OCC implementing regulations provides that answer:

> Determination of the state referred to in *12 U.S.C. 92a*.  For each fiduciary relationship, the state referred to in section 92a is the state in which the bank acts in a fiduciary capacity for that relationship.  <u>A national bank acts in a fiduciary capacity in the state in which it accepts the fiduciary appointment, executes the documents that create the fiduciary relationship, and makes discretionary decisions regarding the investment or distribution of fiduciary assets.</u>  If these activities take place in more than one state, then the state in which the bank acts in a fiduciary capacity for section 92a purposes is the state that the bank designates from among those states.

12 C.F.R. § 9.7(d) (emphasis added); *see also* 12 C.F.R. §§ 9.7(e)(1) ("The state laws that apply to a national bank's fiduciary activities by virtue of 12 U.S.C. § 92a are the laws of the state in which the bank acts in a fiduciary capacity").  Under § 92a, therefore, the determination of which fiduciary powers a national bank may exercise in any particular state is governed by the law of the state where the national bank acts in a fiduciary capacity.

Under the above framework set forth by the NBA and OCC, it is clear that Texas is where ReconTrust is located, Texas law thus governs ReconTrust's fiduciary activities, and Texas law specifically allows ReconTrust to exercise the power of sale in Utah.

ReconTrust is "located" for § 92a purposes where it acts in a "fiduciary capacity," which is where it "accepts the fiduciary appointment, executes the documents that create the fiduciary relationship, and makes discretionary decisions regarding the investment or distribution of fiduciary assets."  12 C.F.R. § 9.7(d).  Here, the Substitution of Trustee attached to the Verified Complaint as <u>Exhibit 6</u>, under which ReconTrust accepted its fiduciary appointment for

Plaintiff's property, bears a return address in Texas.   Accordingly, ReconTrust accepted its fiduciary appointment, executed documents related to its fiduciary duties, and made discretionary decisions regarding its duties for each of Plaintiff's properties—all in the State of Texas.   Indeed, nothing in Plaintiffs' Verified Complaint alleges that ReconTrust took any of these actions in Utah or elsewhere. Accordingly, because ReconTrust acts in a "fiduciary capacity" in the state of Texas, it is "located" in Texas for § 92a purposes.

Texas law expressly provides ReconTrust with the authority to act as trustee under deeds of trust, and to exercise the power of sale with regard to such deeds of trust.  *See* TEX. FIN. CODE ANN. §§ 32.001, 182.001; TEX. PROP. CODE ANN.  §§ 51.0001, 51.0074.  As a result, ReconTrust has the authority to participate in the foreclosure as a trustee, and Plaintiff's claim for declaratory judgment fails as a matter of law.

## IV.    CONCLUSION

In sum, Plaintiff's Verified Complaint should be dismissed, with prejudice, for several reasons.   First, it is barred by the doctrine of claim preclusion, because all of the claims asserted could have been brought in the First Action, which terminated with a final judgment on the merits.   Second, each of Plaintiff's claims is an attempt to enforce a right to a private right of action under HAMP, which has been uniformly rejected at the federal level.   Third, each claim fails as a matter of law to state a plausible claim.   Accordingly, the instant Motion should be granted.

DATED this 15th day of August, 2011.

Respectfully submitted,

*s/ Philip D. Dracht*
Philip D. Dracht, #11561
FABIAN & CLENDENIN, P.C.
215 South State Street, Ste. 1200
Salt Lake City, UT 84111
Telephone:  (801) 596-2814
Telefax:  (801) 596-2814
Email:  pdracht@fabianlaw.com
*Attorneys for Defendants Deutsche Bank National Trust Co. as Trustee for BCAP LLC Trust 2007-AA2; Recontrust Company, N.A., and BAC Home Loans Servicing, L.P.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 15th day of August, 2011, the foregoing **Memorandum in Support of Motion to Dismiss** was filed with the Clerk of the Court via ECF and served upon all counsel appearing.

*s/Philip D. Dracht*