FILED
U.S. DISTRICT COURT

2011 SEP 23 P 2: 52

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

Abraham C. Bates (12440)
Brandon S. Mecham (13298)
WASATCH ADVOCATES, LLC
4525 Wasatch Blvd, Suite 300
Salt Lake City, Utah 84124
Telephone: (801) 662-0077
Email: abe@slclawfirm.com
Email: brandon@slclawfirm.com

*Attorneys for Plaintiff ALLEN R. HAKES*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ALLEN R. HAKES, an individual,<br><br>    Plaintiff,<br><br>vs.<br><br>DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee on behalf of BCAP LLC Trust 2007-AA2, a national association; RECONTRUST COMPANY, N.A., a national association; BAC HOME LOANS SERVICING, L.P., a Texas limited partnership; and DOEs 1-10,<br><br>    Defendants. | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br><br>Case No. 2:11CV00663<br><br><br>The Honorable Dee Benson |

Plaintiff Allen R. Hakes, by and through his counsel of record, hereby submits the

following Memorandum in Opposition to Defendants Deutsche Bank National Trust Company,

ReconTrust and BAC Home Loans Servicing's Motion to Dismiss Plaintiff's Verified Complaint

Pursuant to Fed. R. Civ. P. 12(b)(6).

## **INTRODUCTION**

In a prior proceeding, Plaintiff filed a complaint in Utah's Fourth Judicial District Court,

which case was removed to federal court and subsequently dismissed. *See Hakes v. Centennial Bank, Inc., et al.*, No. 2:11-CV-1 TS (D. Utah May 23, 2011) (unpublished). Plaintiff attempted to amend the complaint in that proceeding with entirely different claims arising from an entirely different transaction or occurrence. Because Plaintiff failed to comply with the Federal Rules of Civil Procedure, Plaintiff's motion to amend was denied and the amended complaint was stricken and never decided on its merits. The original complaint, which was decided on its merits, was dismissed, at which point, Plaintiff initiated this action by filing a new complaint alleging some of the same facts as in the amended complaint that was never adjudicated on the merits.

Defendants Deutsche Bank National Trust Company as Trustee for BACP LLC Trust 2007-AA2 ("Deutsche Bank"), Recontrust Company, N.A. ("Recontrust"), and BAC Home Loans Servicing, L.P. ("BAC") now seek to dismiss the Complaint for failure to state a claim upon which relief can be granted. As set forth below, the Complaint is not barred by claim preclusion and the Complaint states claims against Defendants upon which relief can be granted. Therefore, Defendants' Motion to Dismiss should be denied.

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) is only proper where the Complaint fails to "state[] a plausible claim for relief". *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). Further, under a Rule 12(b)(6) motion, the Court must "accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the non-moving party." *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000) (internal quotations omitted).

## ARGUMENT

Plaintiff has stated several claims against Deutsche Bank, BAC and Recontrust (collectively "Defendants") upon which relief can be granted. When the well-pleaded facts of the Complaint are accepted as true and viewed in the light most favorable to Plaintiff, Plaintiff's claims: (1) are not barred by claim preclusion; (2) are not disguised Home Affordable Modification Program ("HAMP") claims; and (3) do not otherwise fail as a matter of law.

**I.      Plaintiff's claims are not barred by the doctrine of claim preclusion because they were never considered or adjudged in the previous proceeding.**

Defendants' claim preclusion argument is inapplicable because none of the claims in the present Complaint resulted in "a final judgment on the merits" in the earlier action. *See Wilkes v. Wyoming Dept. of Employment Div. of Labor Standards*, 314 F.3d 501, 504 (10th Cir. 2002) (internal quotations omitted). While the Court did in fact grant "Defendants' Motion to Strike or in the Alternative to Dismiss Plaintiff's Amended Complaint," Mem. Decision and Order at 3, Ex. C to Mot. to Dismiss, the result was merely that the amended complaint was stricken.

Defendants' entire argument is based on the Complaint in the instant case being the same as the amended complaint in the previous action; however, the facts and claims of the amended complaint were never even considered, much less "adjudicated on the merits," because the amended complaint was stricken. *Id.* ("The Court will, therefore, strike Plaintiff's Amended Complaint . . . ."). Plaintiff's Motion for Leave to Amend was denied, *id.* at 4, and thus the amended complaint was never properly before the Court. Thus, while the complaint in the previous action was dismissed with prejudice, that dismissal did not extend to the amended complaint. *See id.* Because the amended complaint in the previous case was stricken, and Plaintiff was not granted leave to amend, the claims in the current Complaint were never subject

3

to a "final judgment on the merits in an earlier action". *Wilkes*, 314 F.3d at 504.

Furthermore, because claim preclusion does not apply, Defendants cannot argue that Plaintiff's current claims should have been brought in the previous proceeding.  Mem. in Supp. at 6 ("[w]here it applies, claim preclusion bars not only claims that were actually brought, but any claims that could have been brought in the initial proceeding.").  In support of its proposition, Defendants cite two cases: *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005) and *Satsky v. Paramount Communications, Inc.*, 7 F.3d 1464, 1467–68 (10th Cir. 1993).  Mem. in Supp. at 6.  However, neither case should persuade the Court that Plaintiff was required to bring his current claims in the prior suit.

In *MACTEC* the court stated that "[preclusion] is appropriate unless the party seeking to avoid preclusion did not have a full and fair opportunity to litigate the claim in the prior suit." *MACTEC* at 831.  As explained at length, the claims currently before the Court were stricken and never considered in the prior proceeding.  Therefore, Plaintiff never had a "full and fair opportunity" to litigate them.  Further in defining a "claim", the *MACTEC* court stated that "to determine what constitutes a cause of action for preclusion purposes, this court has adopted the transactional approach ... Under this approach, a cause of action includes all claims or legal theories or recovery that arise from the same transaction." *Id.* at 832.  The factual basis that forms the claims in the Complaint presently before the court is significantly different than the facts alleged in the previous complaint.

The previous complaint stated a sole cause of action for declaratory judgment that essentially claimed MERS did not have authority to assign the beneficial interest in Plaintiff's Trust Deed.  *See generally* Dismissed Complaint, attached as Exhibit A to Mem. in Supp.  This

cause of action, claiming a defective chain of title prohibiting the trustee's ability to foreclose, stems from a different transaction or occurrence than the claims pled in the present Complaint. In the present case, the supporting facts stem from Plaintiff's interactions with BAC Home Loans Servicing, LP ("BAC") while Plaintiff was attempting to receive a permanent loan modification. *See generally* Complaint. Plaintiff's current claims do not relate to MERS in any way and do not rely on the deed of trust or the chain of title or MERS' inclusion therein. Plaintiff was not afforded the opportunity to fully and fairly litigate the present claims and the claims do not arise from the same transaction as those presented in the prior proceeding. Therefore, according to *MACTEC*, Plaintiff was not required to bring his current claims in the prior proceeding and Plaintiff's claims should not be barred by claim preclusion.

In *Satsky*, the court never reached the question of whether "the prior suit involved identical claims as the claims in the present suit". *Satsky* at 1467. Further, the *Satsky* court stated that "a dismissal without prejudice is a dismissal that does not operate as an adjudication upon the merits … and thus does not have a res judicata effect." *Id.* at 1468 (internal quotations omitted). While Plaintiff's prior MERS claim was dismissed with prejudice, the claims before the Court were never even considered and there is no indication that they would have also been dismissed with prejudice; especially where they have no relation whatsoever to Plaintiff's prior declaratory judgment claim. Accordingly, the Court should not find that the dismissal of the prior MERS claim operates as an adjudication upon the merits of the claims currently before the Court.

Defendants have failed to satisfy the first element of claim preclusion because the claims currently before the Court were never decided upon their merits. Additionally, because claim

preclusion does not apply, Defendants cannot reasonably argue that Plaintiff's current claims should have been brought in the previous proceeding, Mem. in Supp. at 6; especially where Plaintiff's current claims arise out of an entirely different transaction or occurrence than the declaratory judgment claim in the prior complaint. For these reasons, the Court should not dismiss Plaintiff's claims on a basis of claim preclusion.

## II.     HAMP does not provide defendants with an unassailable privilege to violate any and all laws arising under contract or tort law.

Defendants erroneously assert that Plaintiff's claims are "nothing more than an attempt to assert a private right of action under HAMP". Mem. in Supp. at 8. Defendants' assertion is baseless; especially where Plaintiff has neither claimed entitlement to a HAMP modification merely by applying, nor claimed that any of the Defendants owed him obligations under HAMP. If the parties had not attempted a HAMP modification, but some other modification process, Plaintiff could still bring claims and causes of action resulting from Defendants' bad acts. In other words, none of the claims asserted by Plaintiff rely on whether or not the modification process was pursuant to HAMP.

The sole basis underlying Defendants' assertion is that "[e]ach claim had its genesis in a failed HAMP modification, and the allegedly wrongful conduct alleged against Defendants is rooted in a failure to provide the precise loan modification Plaintiff desired." Mem. in Supp. at 9. First, Plaintiff affirmatively asserts that his Ninth and Tenth causes of action challenge Recontrust's authority to conduct foreclosure sales and do not have their genesis in a HAMP modification. *See* Compl. at 19-21. Second, the genesis of Plaintiff's claims is Defendants' two-year span of bad acts regardless of whether the behavior related to HAMP. *See* Compl. at 3-8. A party does not assert a private right of action under HAMP simply because a claim has some

relation to the HAMP loan modification process.  Plaintiff has not asserted any cause of action on the basis that one or more of Defendants failed to uphold an obligation under HAMP.  Also, Plaintiff has not asserted any cause of action on the basis that he was entitled to a HAMP modification merely by applying.  Plaintiff has asserted that one or more of Defendants made representations to him which were negligent, false or later breached. *See generally* Compl. Further, certain of Defendants' representations and the actions they induced, such as encouraging Plaintiff to default, occurred well before Plaintiff even submitted a HAMP application packet. *See* Compl. ¶¶ 16-19.  Defendants cannot repeatedly misrepresent facts to Plaintiff for two years, whether before, during, or after the HAMP modification process, and then claim protection under HAMP simply because their misrepresentations have some relation to HAMP.

Were the Court to entertain Defendants' reasoning, a servicer could deal with a borrower as fraudulently or dishonestly as it wanted so long as it was a HAMP participant.  Essentially, no matter how egregious an act, omission or representation, a servicer would be shielded from liability as long as the act, omission or representation occurred while the parties were working towards a loan modification under HAMP.  The Court should be wary to establish such a precedent.

Defendants have offered nothing to show that Plaintiff has claimed entitlement to a HAMP modification by simply applying, sought relief based on some failure of Defendants to perform duties owed to him under HAMP, or that Plaintiff's claims, and/or the relief sought therefrom, are in any way reliant on HAMP.  The Court should not allow Defendants to use HAMP as a shield from liability for approximately two years of bad acts and misrepresentations committed against Plaintiff.  Accordingly, the Court should not dismiss any of Plaintiff's claims

for their coincidental connection to HAMP.

### III.   Plaintiff's Complaint does not otherwise fail to state claims upon which relief can be granted.

Plaintiff has stated ten causes of action against one or all of Defendants. *See generally*

Compl. As set forth below, each of Plaintiff's causes of action states a claim upon which relief

can be granted. Accordingly, Defendants' Motion to Dismiss should be denied.

#### A. Plaintiff's negligence-based claims are not barred by the economic loss rule.

Defendants' sole contention for dismissing Plaintiff's negligence and negligent

misrepresentation claims is that the claims are barred by the economic loss rule. Mem. in Supp.

at 10-11. Such a contention fails for several reasons. First, Plaintiff has alleged physical harm or

bodily injury. Second, Defendants owed Plaintiff several duties independent of any contract.

##### 1. Plaintiff's claims are not barred by the economic loss rule because he has stated a plausible claim of bodily injury.

In Utah, "[t]he economic loss rule prevents a party from claiming economic damages in

negligence absent physical property damage *or bodily injury.*" *West v. Inter-Financial, Inc.*,

2006 UT App 222, ¶ 5, 139 P.3d 1059 (internal quotations omitted) (emphasis added). Plaintiff

has alleged that, due to his dealings with Defendants for two years, he has suffered severe

emotional distress. Compl. ¶ 116. Plaintiff recognizes that the typical loan modification or

foreclosure process is not accompanied by the type of severe emotional distress to which liability

usually attaches. However, Plaintiff's situation is not typical. Plaintiff was induced to default on

his mortgage payments and subsequently led so far down a road by Defendants that he had no

alternative but to follow them in a continuous circle of misrepresentation. It is certainly

plausible that Defendants not only caused Plaintiff severe emotional distress, but that they could

have foreseen the emotional distress and foreseen that it could cause bodily harm or illness. *See Hansen v. Mountain Fuel Supply Co.*, 858 P.2d 970, 974 (Utah 1993) (recognizing cause of action for negligent infliction of emotional distress when an actor should have realized risk of distress, which distress might cause bodily harm).[1]

Plaintiff's claim of negligent infliction of emotional distress is similar to that of the plaintiffs in *Stanton v. Ocwen Loan Servicing, LLC, et al.* in which the court found that "it would be premature to dismiss the claim prior to discovery." No. 1:10-cv-00002-DAK, 2010 WL 3824640, at *6 (D. Utah Sept. 28, 2010) (unpublished). Like the plaintiffs in *Stanton*, Plaintiff has alleged the necessary elements to state a claim for negligent infliction of emotional distress. *Id.* In light of the well-pleaded facts, the Court should not dismiss Plaintiff's claim prior to discovery and prior to allowing him to prove that his emotional distress rises to "the levels suggested by the Utah Supreme Court". *Id.* (citing *Harnicher v. Univ. of Utah Med. Ctr.*, 926 P.2d 67, 69 (Utah 1998); *Hansen v. Mountain Fuel Supply Co.*, 858 P.2d 970, 975 (Utah 1993)). Therefore, where Plaintiff has alleged a plausible claim of bodily injury from Defendants' negligence, the Court should not dismiss his claims for negligence, negligent misrepresentation, or negligent infliction of emotional distress.

**2. Plaintiff's claims are not barred by the economic loss rule because Defendants owed him duties independent of any contract.**

The Utah Supreme Court has stated that, "[w]hen an independent duty exists, the economic loss rule does not bar a tort claim because the claim is based on a recognized and independent duty of care and thus does not fall within the scope of the rule." *Hermansen v.*

---

[1] Defendants erroneously argue that Plaintiff's claim for negligent infliction of emotional distress should be dismissed based upon the elements for <u>intentional</u> infliction of emotional distress. Mem. in Supp. at 16. Therefore, Defendants' argument should be entirely disregarded.

*Tasulis*, 2002 UT 52, ¶ 17, 48 P.3d 235 (internal quotations omitted). Defendants owed Plaintiff

at least three duties independent of any contract: (1) duties pursuant to a fiduciary or confidential

relationship; (2) duties pursuant to one or more of Defendants engaging in banking functions;

and (3) duties pursuant to Utah statute.

### i.   Defendants and Plaintiff had a fiduciary and/or confidential relationship.

First, in Utah, it is well established that "a fiduciary or confidential relationship will be

found when one party, having gained the trust and confidence of another exercises extraordinary

influence over the other party." *State Bank of Southern Utah v. Troy Hygro Sys, Inc.*, 894 P.2d

1270, 1275 (Utah Ct. App. 1995). The Complaint establishes that Plaintiff reasonably placed his

trust in BAC who then exercised extraordinary influence over him.

Plaintiff was an unsophisticated borrower and BAC was not only his servicer, but a

nationally recognized financial institution. Compl. ¶ 74. BAC, possessing the trust and

confidence of Plaintiff, then exercised extraordinary influence over him. BAC encouraged

Plaintiff to default on his loan payments knowing that Plaintiff was likely to act as instructed.

Compl. ¶ 112. Though in financial difficulty, Plaintiff had no reason to default on his loan

payments. Compl. ¶¶ 12-13. Essentially, Plaintiff would not have voluntarily defaulted if not

for the encouragement he received from BAC. Compl. ¶ 17. The Complaint establishes that

BAC, having the trust and confidence of Plaintiff, induced him to do something drastic, that is,

cease making payments on a home in which he desired to stay. Further, once Plaintiff defaulted,

BAC made several misrepresentations which coerced Plaintiff to continue down the loan

modification route rather than pursuing a better alternative. Compl. ¶ 62. Plaintiff's delinquency

grew, contrary to BAC's representations, Compl. ¶ 38, to a point where Plaintiff could not

reasonably repay his delinquency and now faces the loss of his home. Compl. ¶ 75. Therefore,

BAC exercised extraordinary influence over Plaintiff, and created a confidential and/or fiduciary

relationship independent of any contract.

### ii. Defendants owed Plaintiff a duty of due care and good faith.

Second, Utah's Supreme Court has long held that:

> a bank cannot contractually exculpate itself from the consequences of its own negligence or lack of good faith in the performance of *any of its banking functions*. We find the public need for professional and competent banking services too great and the legitimate and justifiable reliance upon the integrity and safety of financial institutions too strong to permit a bank to contract away its liability for its failure to provide the service and protections its customers justifiably expect, that is, for its failure to exercise due care and good faith.

*Arrow Industries, Inc. v. Zions First Nat. Bank*, 767 P.2d 935, 938 (Utah 1988) (emphasis in

original). Deutsche Bank and/or BAC were acting as banks in relation to Plaintiff's loan

modification attempts. In accordance with the Utah Supreme Court, this Court should not allow

Defendants to "contractually exculpate [themselves] from the consequences of [their] own

negligence or lack of good faith in the performance of *any of [their] banking functions*." *Arrow*

*Industries*, 767 P.2d at 938 (emphasis in original). Defendants are seeking to do exactly what the

Utah Supreme Court has prohibited; that is, acting negligently and in bad faith only to invoke the

economic loss rule and hide behind a contract. Pursuant to Utah's absolute necessity for

"professional and competent banking services", Defendants owed Plaintiff at least a duty of "due

care and good faith" and cannot now invoke the economic loss rule to evade their duty. *Id.*

Defendants argue that if there even was a duty, it had to arise from the "HAMP Trial

Period Plan". Mem. in Supp. at 10-11. Assuming, *arguendo*, that Defendants initially owed no

duty to Plaintiff, the circumstances of this case are similar to those in *Christenson v.*

11

*Commonwealth Land Title Ins. Co.* in which the Utah Supreme Court held that even if a duty

didn't previously exist, a duty arose when a title company started making representations.  666

P.2d 302, 306 (Utah 1983) (citing *Arizona Title Insurance and Trust Co. v. O'Malley Lumber

Co.*, 14 Ariz.App. 486, 484 P.2d 639 (1971)).  The *Christenson* court found that even though no

duty existed between the parties, "when Commonwealth signed the acknowledgment, a duty

arose to use reasonable care to not mislead one whom Commonwealth knew would justifiably

rely upon the facts as represented." *Christenson*, 666 P.2d at 306.

  The *Christenson* court was heavily persuaded by *Arizona Title Insurance and Trust Co.*

which held that "if [the title company] chose to speak…it [had] a duty to exercise reasonable

care in making representations about presently ascertainable facts." *Arizona Title Insurance*, 484

P.2d at 645.  BAC knew or should have known that Plaintiff would reasonably rely on its

representations.  Compl. ¶ 112.  At the time it told Plaintiff to default on his loan and to stop

making payments, BAC knew of the detrimental risks those actions posed to Plaintiff.  BAC also

knew, or should have known, that Plaintiff could not qualify for a loan modification by simply

defaulting and that he would not automatically qualify for a permanent modification by

completing a trial plan.  Compl. ¶ 68.  BAC may not have been initially obligated to inform

Plaintiff about a loan modification or "help" him in any way, but just as the title companies in

*Christenson* and *Arizona Title Insurance*, as soon as BAC started making representations to

Plaintiff, it had a duty to exercise reasonable care in informing Plaintiff of how to actually

qualify for a modification and the risks associated with BAC's advice.  Whether or not BAC

initially owed Plaintiff an independent duty, when BAC started making representations to

Plaintiff, "a duty arose to use reasonable care to not mislead one whom [Defendant] knew would justifiably rely upon the facts as represented." *Christenson*, 666 P.2d at 306.

Defendants are further mistaken in their belief that any duty had to "arise[] under the Trial Period Plan". Mem. in Supp. at 11. The initial negligence of BAC (encouraging Plaintiff to default) occurred well before the Trial Period Plan. Further, several of BAC's negligent acts occurred after the Trial Period Plan had technically expired. Basically, the Trial Period Plan did not contain all of the "bargained-for risks" and the majority of the parties' relationship was not governed by the Trial Period Plan. Mem. in Supp. at 10. Therefore, Plaintiff does not have to "aver a specific breach of a duty arising under the Trial Period Plan" in order to state negligence-based claims. Mem. in Supp. at 11. Defendants owed Plaintiff an independent duty the second they engaged in banking functions and the second they "chose to speak" about presently ascertainable facts. *Arizona Title Insurance*, 484 P.2d at 645.

### iii. Defendants owed Plaintiff a statutory duty.

Third, according to Utah statue, Defendants are prohibited from "engag[ing] in an act or omission in transacting the business of a loan originator that constitutes dishonesty, fraud, or misrepresentation." UTAH CODE ANN. § 70D-3-402(1)(g) (West 2011). The Utah Code defines "loan originator" as one who, among other things, "offers or negotiates a term of a residential mortgage loan." UTAH CODE ANN. § 70D-3-102(12)(a)(ii) (West 2011). Because BAC induced Plaintiff to default on his mortgage and stop making payments in order to offer and/or negotiate new loan terms, BAC engaged in business as a loan originator. Compl. ¶¶ 14-16. Therefore, pursuant to Utah statute, BAC owed Plaintiff a duty not to make misrepresentations or act

dishonestly. Accordingly, the Complaint has established an independent statutory duty owed by BAC.

Defendants erroneously rely on a recent decision by this Court for the proposition that negligent misrepresentations related to a HAMP modification are always barred by the economic loss doctrine. Mem. in Supp. at 11 (citing *Andersen v. Homecomings Fin., LLC*, No. 2:11-CV-332-TS, 2011 WL 2470509 (D. Utah June 20, 2011)). The instant case is readily distinguishable from *Andersen* because, first, the *Andersen* plaintiff did not allege physical harm or bodily injury as Plaintiff has in this case. *See* Compl. at 19. Further, unlike the plaintiff in *Andersen*, Plaintiff has not received three special forbearance agreements with which he failed to comply. *Andersen* at \*9. While the *Andersen* court acknowledges an economic loss argument, the *Andersen* court concluded that the negligent misrepresentation claim should be dismissed because the plaintiff's subsequent actions showed that he did not reasonably rely on the servicer's negligent misrepresentations. *Id.* As set forth above, and as demonstrated by his actions, Plaintiff faithfully adhered to BAC's representations, and did so for two years. Accordingly, the Court's determination of Plaintiff's negligent misrepresentation claim should not be persuaded by Defendants' reliance on the *Andersen* case.

When the facts of the Complaint are accepted as true and viewed in a light most favorable to Plaintiff, the economic loss rule is inapplicable. Plaintiff reasonably placed his trust and confidence in Defendants, which Defendants used to exercise extraordinary influence over Plaintiff. Further, Defendants engaged in banking functions, made representations upon which they knew Plaintiff would reasonably rely, and also engaged in transacting the business of a loan originator. Because Defendants owed Plaintiff several independent duties, the Court should not

dismiss Plaintiff's negligence-based claims for failure to state a claim.

**B.  Plaintiff has stated a claim for breach of fiduciary duty.**

As explained above, the Complaint established that a fiduciary and/or confidential relationship existed between the parties.  Plaintiff reasonably placed his trust and confidence in Defendants and they exercised extraordinary influence over him. *State Bank of Southern Utah*, 894 P.2d 1270.  This case is again similar to that of *Stanton v. Ocwen Loan Servicing, LLC*.  In *Stanton* the "[p]laintiffs were "strung along [for several months], repeatedly being reassured that 'everything was fine' and that there would be no foreclosure on their property". *Id*. at *5. Plaintiff in the present case was strung along for two years and received similar reassurances. Compl. ¶¶ 28, 38.  Further, the plaintiffs in *Stanton* eventually had their permanent loan modification "voided", *Stanton* at *2, very similar to how Plaintiff's promised loan modification was denied on false grounds, Compl. ¶¶ 40-42.  A comparison of the facts in this case to those in *Stanton* demonstrates that, like *Stanton*, "the lender has 'gone beyond simply providing money to the borrower.'" *Id*. *6.  Accordingly, the Court should not dismiss Plaintiff's claim for breach of fiduciary duty on the premise that no duty existed.

**C.  Plaintiff has stated a claim for breach of contract.**

The Complaint establishes that the Trial Period Plan constituted a contract between Plaintiff and BAC, on behalf of Deutsche Bank. Compl. ¶ 86.  Defendants contend that Plaintiff's claim for breach of contract goes contrary to the terms of the Trial Period Plan, Mem. in Supp. at 13-14, despite the fact that the language of the Trial Period Plan expressly supports Plaintiff's position.  The first paragraph of the Trial Period Plan expressly states that "[i]f I am in compliance with this Trial Period Plan...then [BAC] will provide me with a Home Affordable

Modification Agreement." Trial Period Plan, Ex. 3 to Compl. It is immaterial whether the Trial

Period Plan states that a modification will not be permanent until a modification agreement is

executed by the parties. Mem. in Supp. at 13. Plaintiff complied with the Trial Period Plan, and

thus should have been provided a modification agreement which he could either accept or reject.

The Complaint establishes that not only was Plaintiff in compliance with the Trial Period

Plan, but that BAC denied his modification on false grounds. Compl. ¶¶ 40-42. Defendants do

not challenge whether Plaintiff was denied on false grounds, and further, Defendants do not even

address the second breach of the Trial Period Plan. BAC claimed that it would contact Plaintiff

subsequent to a denial to inform him of other available options. Compl. ¶ 87. Plaintiff was

never contacted by BAC, which failure of BAC was an additional breach of contract. Compl. ¶

89.

Even if the Court entertains Defendants' arguments in support of dismissing the breach of

contract claim, Plaintiff has raised serious doubts about what the language of the Trial Period

Plan actually means. Therefore, the Court should not dismiss Plaintiff's claim for breach of

contract before such ambiguities can be resolved.

### D. Plaintiff has stated a claim for breach of oral contract.

Defendants also contend that Plaintiff's claim for breach of oral contract should be

dismissed because it is contrary to the terms of the Trial Period Plan. Mem. in Supp. at 13.

First, the Complaint establishes the existence of an oral contract, which Defendants do not

dispute. Compl. ¶¶ 93-94. Second, nothing in the Trial Period Plan is contrary to Plaintiff's

assertions that BAC would not foreclose as long as Plaintiff attempted to receive a permanent

loan modification or that BAC would consider Plaintiff in good faith. Compl. ¶¶ 93-94. The

Complaint establishes several examples of how BAC breached its oral agreements to Plaintiff and not one of the examples runs contrary to the terms of the Trial Period Plan or any other written contract. Compl. ¶ 97. Defendants have not shown how any of the breaches identified by Plaintiff are contrary to the Trial Period Plan, and in fact, Defendants merely make a bare assertion that the "oral representations . . . were contrary to the Trial Period Plan." Mem. in Supp. at 13.

The Complaint has established the existence of an oral contract which BAC breached and which breaches BAC has not sufficiently challenged. Accordingly, the Court should not dismiss Plaintiff's claim for breach of oral contract.

### E. Plaintiff has stated a claim for breach of implied covenant of good faith and fair dealing.

In Utah, every contract contains a covenant of good faith and fair dealing by which "each party impliedly promises that he will not intentionally or purposely do anything which will destroy or injure the other party's right to receive the fruits of the contract." *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 199 (Utah 1991) (citations omitted). The court in *St. Benedict's* further stated that "[t]o comply with his obligation to perform a contract in good faith, a party's actions must be consistent with the agreed common purpose and the justified expectations of the other party." *Id.* at 200. The Complaint identifies several instances in which Defendants either (1) injured Plaintiff's right to receive the fruits of the written and oral contracts or (2) acted in a manner contrary to Plaintiff's justified expectations. Compl. ¶¶ 104-06.

Defendants do not challenge whether contracts existed to which an implied covenant attached nor do Defendants challenge whether they acted in the manner identified by Plaintiff. Compl. ¶ 104. Defendants merely argue that because "none of these actions are barred by the

17

Trial Period Plan" they do not violate the implied covenant. Mem. in Supp. at 14. First, the Trial Period Plan provided that as long as Plaintiff was in compliance, he would receive a modification agreement, Trial Period Plan, Section 2c, First Paragraph; however, Defendants denied his loan modification on false grounds even though he was compliant. Compl. ¶104(e). Lastly, BAC stated that it would contact Plaintiff regarding additional options if he were denied a loan modification, which promise BAC never upheld. Compl. ¶ 104(h).

Second, even if certain breaches are not explicitly barred by the Trial Period Plan, Defendants' assertion is erroneous. The implied covenant of good faith and fair dealing would serve no purpose if the only way in which a party could act in bad faith was to violate some express provision of the contract. Defendants have confused the difference between breach of contract and breach of the implied covenant. A contract could hardly enumerate every way in which a party could "destroy or injure the other party's right to receive the fruits of the contract." *St. Benedict's* at 199. If Defendants' reasoning were accepted, a party could easily find a way to act contrary to the justified expectations of the other party and then escape liability because it acted in a manner not explicitly identified by the contract.

The purpose of the implied covenant is to make sure that the "[parties'] actions [are] consistent with the agreed common purpose and the justified expectations of the other party." *Id.* at 200. BAC did not act consistent with Plaintiff's justified expectations when it, among other things, denied his loan modification on false grounds, and extended a three-month trial period at least eight months, and to a point that he no longer qualified for HAMP. Compl. ¶ 104. Plaintiff has not sought to impose extra duties or obligations upon Defendants. Mem. in Supp. at 14. Defendants were required to act in good faith all along and Plaintiff has identified several

instances in which Defendants did not act in good faith.  Therefore, Plaintiff has stated a claim

for breach of the covenant of good faith and fair dealing.

### F.  Plaintiff has stated a claim for promissory estoppel.

Defendants contend that Plaintiff's claim for promissory estoppel should be dismissed

because Plaintiff has not shown reasonable reliance.  Mem. in Supp. at 15.  Defendants'

argument is based upon the false premise that the representations upon which Plaintiff relied

were contrary to the terms of the Trial Period Plan.  *Id.*  As previously explained, none of the

representations upon which Plaintiff relied were contrary to the Trial Period Plan, and therefore,

Plaintiff was reasonable in relying upon them.

First, before the Trial Plan was ever executed, BAC promised Plaintiff that "he could get

a loan modification, but only if he became delinquent on his loan first."  Compl. ¶ 14.  BAC also

"encouraged Hakes to stop making his payments in order to qualify."  *Id.* ¶ 15.  Furthermore,

"Hakes relied on the representations made by BAC when he stopped making payment on his

loan."  *Id.* ¶ 15.  These promises and resulting reliance occurred before the existence of the Trial

Plan, and thus the terms of the Trial Plan have no bearing on this portion of the claim.

Moreover, the first paragraph of Plaintiff's claim for promissory estoppel states: "Plaintiff

repeats and reincorporates all preceding paragraphs by reference."  *Id.* ¶ 109.  Thus, even though

the aforementioned promise and reliance is not explicitly pled under the Seventh Cause of

Action for promissory estoppel, it is constructively pled nonetheless.

Second, Nothing in the Trial Plan is contrary to BAC's promise to "fairly review

[Plaintiff]…in good faith".  Compl. ¶ 111(a).  The Trial Period Plan itself states that review will

not take longer than 45 days, Compl. ¶ 111(b) and Trial Period Plan, Section 5b, FAQs, and the

Trial Period Plan additionally states that "TIME IS OF THE ESSENCE under this Plan".   Trial Period Plan § 2(A) (emphasis in original).   The Trial Period Plan itself also states that it will process a modification request as quickly as possible.   Compl. ¶ 111(c); Trial Period Plan, Section 5b, FAQs.

Nothing in the Trial Period Plan is contrary to BAC's promise that as long as Plaintiff made payments he would receive a modification.   Compl. ¶ 111(d).   As explained above, the Trial Period Plan expressly states that "[i]f I am in compliance with this Trial Period Plan…then the Servicer will provide me with a Home Affordable Modification Agreement."   Trial Period Plan, Section 2c, First Paragraph.   For the same reason, BAC's promise, that if Plaintiff continued making payments for eight (8) months, he would receive a loan modification, is not contrary to anything in the Trial Period Plan.   Compl. ¶ 111(e).

Nothing in the Trial Period Plan is contrary to BAC's promise to use thirty-one percent (31%) of his monthly income to qualify him for HAMP.   Compl. ¶ 111(f).   Lastly, nothing in the Trial Period Plan is contrary to the promise that BAC would refrain from foreclosure while Plaintiff sought a loan modification.   Compl. ¶ 111(g).   In fact, the Trial Period Plan states that foreclosure sales will be suspended as long as Plaintiff meets his obligations under the Trial Period Plan.   Trial Period Plan § 2(A).

When the facts of the Complaint are accepted as true and viewed in the light most favorable to Plaintiff, BAC's promises were not contrary to the terms of the Trial Period Plan, and therefore, Plaintiff was reasonable in relying upon them.   Defendants do not challenge the other elements of promissory estoppel, and therefore, Plaintiff affirmatively asserts that such elements are satisfied.   Accordingly, Plaintiff has stated a plausible claim for promissory

estoppel and the Court should deny Defendants' Motion to Dismiss.

### G.  Plaintiff has stated a claim for declaratory judgment.

Plaintiff has stated a claim for declaratory judgment which is plausible and not preempted

by federal law.  While Plaintiff mistakenly states that Recontrust is not qualified to act as trustee,

Compl. ¶ 131, the Complaint is clear that the real issue is not whether Recontrust can be a

trustee, but whether Recontrust can exercise the power of sale.  Compl. ¶¶ 129.  As set forth

below, Utah's limits on the power of sale are not preempted by the NBA.

According to the NBA:

> The Comptroller of the Currency shall be authorized and empowered to grant ... by
> special permit to national banks applying therefore, <u>when not in contravention of State or
> local law</u>, the right to act as trustee ... or in any other fiduciary capacity in which State
> banks, trust companies, or other corporations which come into competition with national
> banks are permitted to act under the laws of the State in which the national bank is
> located.

12 U.S.C.A. § 92a(a) (West 2011) (emphasis added).  According to Utah law "[t]he power of

sale conferred by Section 57-1-23 may only be exercised by the trustee of a trust deed if the

trustee is qualified under Subsection (1)(a)(i) or (iv)."  UTAH CODE ANN. § 57-1-21(3) (West

2011).  Subsection (1)(a)(i) refers to "any active member of the Utah State Bar who maintains a

place within the state" and Subsection (1)(a)(iv) refers to "any title insurance company".  UTAH

CODE ANN. § 57-1-21 (West 2011).  Recontrust is neither an active member of the Utah State

Bar nor a title insurance company and therefore, according to the "State or local law" of Utah,

Recontrust cannot exercise the power of sale.  Further, active members of the Utah State Bar and

title insurance companies do not "compete with national banks" and therefore, Recontrust cannot

claim that its exercise of the power of sale "shall not be deemed in contravention of State or local

law".  12 U.S.C.A. § 92a(b) (West 2011).

It is clear that Recontrust's exercise of the power of sale is in contravention of Utah statute, and therefore, Recontrust is prohibited by the NBA from exercising the power of sale. Additionally, from the plain meaning of the statutes at issue, Plaintiff has stated a plausible claim for relief, and the Court should refrain from going beyond the standard of review for a rule 12(b)(6) motion to dismiss and prematurely deciding the issue as "a matter of law."  Mem. in Supp. at 19.

Recontrust attempts to stretch the NBA in order to say that no matter what a state's law dictates, Recontrust can essentially do whatever it wants in any other state as long as its actions are permitted by Texas law. Mem. in Supp. at 18-19.  Recontrust's position is flawed for at least two reasons: (1) it undermines the principle of competitive equality and (2) it is contrary to the OCC's own interpretation of the statute.

First, Recontrust's alleged ability to exercise the power of sale undermines the principle of competitive equality.  Several courts have specifically acknowledged that "competitive equality" applies to 12 U.S.C. § 92a.  *See St. Louis Cnty. Nat'l Bank v. Mercantile Trust Co. Nat'l Ass'n*, 548 F.2d 716, 720 (8th Cir. 1976) ("[t]he policy of competitive equality was incorporated into section 92a ... Therefore, to allow [a national bank] to accomplish what a state bank could not would frustrate the purpose of section 92a"); *Blaney v. Florida Nat'l Bank*, 357 F.2d 27, 30 (5th Cir. 1966) ("they were primarily designed, rather, to place national banks on an equal competitive basis with state banks ...  This is obvious from the most cursory reading of [12 U.S.C. § 92a]").

By exercising the power of sale in Utah, Recontrust is seeking to do exactly what the principle of competitive equality prohibits, namely, "accomplish what a state bank [cannot]". *St.*

22

*Louis Cnty. Nat'l Bank*, 548 F.2d at 720.  Utah does not allow those state institutions that

compete with national banks to exercise the power of sale, and therefore, Recontrust should not

be allowed to exercise the power of sale.  In other words, the Court should not allow Recontrust

to act "in contravention of State or local law" when Utah does not "permit the exercise of [the

power of sale] by State banks, trust companies, or other corporations which compete with

national banks".  12 U.S.C.A. § 92a(b) (West 2011).

Second, Defendants' legal conclusion is contrary to the OCC's interpretation of the NBA.

The OCC itself has long held that:

> section 92a authorizes a national bank that has been granted fiduciary powers to exercise
> those powers in any state, provided that within each state, the state may bar the exercise
> of such fiduciary powers as the state also does not allow for its own state-chartered
> institutions.  In essence, with respect to national bank fiduciary powers in a given state,
> we believe section 92a applies the same standards to all national banks, both those
> headquartered in that state and those that are "out-of-state banks" with respect to that
> state.

OCC Inter. Ltr. 695 (Mar. 1, 1996), 1996 WL 187825, at *1.  The letter goes on to state that "a

national bank may exercise any of the fiduciary powers granted in section 92a(a) in any state

unless that state both prohibits national banks and restricts its own state institutions from

exercising that fiduciary power." *Id.* at *17.  Clearly, the OCC does not agree that "Texas law

thus governs ReconTrust's fiduciary activities" with respect to the state of Utah.  Mem. in Supp.

at 18.  This Court has also expressed its disagreement with Recontrust's position. *See Cox v.

ReconTrust Co., et al.*, No. 2:10-CV-492 CW, 2011 WL 835893, at *6 (D. Utah Mar. 3, 2011)

(stating that "the court is unconvinced by ReconTrust's argument that § 92a(b) dictates that the

court look to some state law other than Utah state law to evaluate ReconTrust's foreclosure

activities in Utah.").  It does not matter whether a national bank like Recontrust is head quartered

within or without the state of Utah, "[Utah] may bar the exercise of [the power of sale] as [it] also does not allow for its own state-chartered institutions." OCC Inter. Ltr. 695 at *1. In other words, Recontrust may exercise the power of sale in Utah "unless [Utah] both prohibits national banks and restricts its own state institutions from exercising [the power of sale]." *Id.* at *17. Utah clearly prohibits both national banks and its own state institutions from exercising the power of sale, and therefore, according to the OCC itself, Recontrust cannot exercise the power of sale in Utah pursuant to 12 U.S.C. § 92a.

Recontrust cites to a prior order in the *Cox* case for the proposition that "the NBA preempts Utah Code Ann. § 57-1-21". Mem. in Supp. at 17 (citing *Cox v. ReconTrust Co., N.A.*, No. 2:10-CV-492-CW, 2010 WL 2519716, at *5 (D. Utah June 11, 2010)). In making this statement, the *Cox* court merely looked at Utah Code Ann. § 57-1-21 "[o]n its face" and found that because a depository institution could be a trustee, the whole statute was preempted. *Id.* at *9. The *Cox* opinion cited by Defendants did not recognize the fact that depository institutions, the competitors to a national bank, could not exercise the power of sale under Utah Code Ann. § 57-1-21(3). Essentially, the *Cox* court was focused on whether Recontrust could be a trustee in Utah, not whether it could exercise the power of sale in Utah.

Also, the *Cox* court claimed that "[i]n *Zabriske*, the court held that Utah Code Ann. § 57-1-21(3) was preempted by federal law." *Id.* However, the federal law to which *Zabriske* referred was the Home Owners' Loan Act of 1933 ("HOLA") which is governed by the Office of Thrift Supervision ("OTS"). *See Zabriskie v. ReconTrust Co.*, No. 2:08-cv-00155-BSJ, Order of 11/12/08 at 9 (D. Utah). *Zabriskie* had nothing to do with the NBA or the OCC and therefore, *Zabriskie* should not persuade the Court to conclude that Utah Code Ann. § 57-1-21(3) is

preempted by the NBA.

The *Cox* court later revisited its prior decision and expressed skepticism about whether Utah Code Ann. § 57-1-21 was actually entirely preempted by the NBA. *See Cox*, 2011 WL 835893 at *6 (dismissing the plaintiff's claim challenging Recontrust's ability to foreclose, *without prejudice* because it was unsure whether "ReconTrust is a competitor of Utah attorneys or title insurance companies."). Unlike the *Cox* court, this Court should refrain from dismissing Plaintiff's claim at this point.

Plaintiff has alleged that Recontrust does not have the authority to exercise the power of sale on his home. Compl. ¶ 129. As already explained at great length, Plaintiff has stated a plausible claim for relief. Therefore, Plaintiff should be allowed to make such a showing through discovery and/or trial, and if Recontrust still wants to argue preemption, it can make a motion for summary judgment. "Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible "short and plain" statement of the plaintiff's claim, not an exposition of his legal argument." *Skinner v. Switzer*, 131 S.Ct. 1289, 1296 (2011) (emphasis added). Accordingly, the Court should not dismiss Plaintiff's claim for declaratory judgment.

In sum, Plaintiff has stated a plausible claim for a declaratory judgment that Recontrust cannot exercise the power of sale in Utah. Defendants' theories to the contrary do not comport with (1) the principle of competitive equality, (2) the OCC's interpretation of the NBA, or (3) this Court's prior interpretation of the "state" to which Section 92a refers. Accordingly, the Court should deny Defendants' Motion to Dismiss.

## CONCLUSION

For the foregoing reasons, and when the facts of the Complaint are accepted as true and

viewed in light most favorable to Plaintiff, Plaintiff has stated claims against Defendants upon

which relief can be granted.  Therefore, Defendants' Motion to Dismiss should be denied.

DATED this 23rd day of September, 2011.


By: _____

Brandon S. Mecham
*Attorney for Plaintiff ALLEN R. HAKES*

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)** were transmitted *via* CM/ECF Notice of Electronic Filing (NEF) on the 23rd day of September, 2011 for service of process upon the following parties or their counsels of record:

Philip D. Dracht, (11561)
FABIAN & CLENDENIN, PC
215 South State Street, Suite 1200
Salt Lake City, Utah 84111
Tel. (801) 596-8900
Fax (801) 531-1716
pdracht@fabianlaw.com
*Attorneys for Defendants Deutsche Bank National Trust Co. (as Trustee for BCAP*
*LLC Trust 2007-AA2), Recontrust Company, NA and BAC Home Loans Servicing, LP*

_____
Tom Mitchell
*Paralegal*